## Sophia Dubois and others v. Theodore J. Campau.

*Ejectment: Adverse possession: Assessing taxes: Evidence.* In an action of ejectment, where the defense is long continued adverse possession, the fact that the land was assessed to plaintiffs' ancestor, from whom they derived title, at a time when he had been dead for more than thirty years and when defendant's ancestor was paying the taxes, can have no bearing upon the character of the possession, in the absence of any showing that the person in possession had any thing to do with having it so assessed.

*Special questions to jury: Statute construed.* The questions to be separately submitted to the jury under the statute (*Comp. L. 1871, § 6026*), are required to be "particular questions of fact" and such as involve legal consequences and have some controlling force in reaching a conclusion; and a question so general as the inquiry, "By what acts did Joseph Campau claim to hold possession adversely to the plaintiff?" may well be declined.

*Tenants in common: Adverse possession: Presumptions.* Whether a ruling that occupation by one tenant in common, giving leases and receiving rents, for more than twenty years, with the knowledge of his co-tenant, without actual acknowledgment of the latter's rights, and without any claim by such co-tenant for a share of the rents and profits, will bar a recovery in ejectment by the latter, is erroneous:—*Quære?*—CAMPBELL, J., with whom GRAVES, J. concurs, holding that upon such facts the inference or presumption of title is one of law; and CHRISTIANCY, Ch. J., with whom COOLEY J. concurs, holding it to be one of fact for the jury.

*Adverse possession: Evidence: Inferences: Errors that do not prejudice.* But in this case, where such occupation was clearly shown, and there was no evidence tending to show that the possession was other than adverse, the jury would not have been warranted in drawing any other conclusion than that it was adverse; and the ruling in question did not prejudice the plaintiff in error, since under any charge the court could have given on the legal questions, the verdict should have been the same.

*Heard April 24. Decided November 5.*

Error to Wayne circuit.

*D. C. Holbrook,* for plaintiffs in error.

*Henry M. Cheever* and *Theodore Romeyn,* for defendant in error.

CAMPBELL, J.

Ejectment was brought by plaintiffs against defendant to recover an undivided interest in certain premises in Detroit, whereof one Denis Campau died seized in 1818, from whom it is claimed by plaintiffs that all the parties derive title. The defense rested on long and undisturbed possession, by reason whereof they claimed plaintiffs were barred, by the presumptions which the law raises from adverse possession under the circumstances shown.

Joseph Campau, defendant's father, had been in undisturbed possession from 1835 till 1863, and defendant under him ever since; and the evidence showed that he gave leases, received rents, and had possession, and paid taxes all that time. It also appeared that the premises had always been in possession of some one since Denis Campau's death, as well as before.

The only evidence offered, supposed to have an adverse bearing upon the character of Joseph Campau's possession, was an offer to show that by assessment rolls during several years the land was assessed to Denis Campau. But we think the court rightly held this was not important, as it did not appear that Joseph Campau had any thing to do with having it so assessed. If the land was assessed it was no more than prudent in him to pay the taxes without reference to names. And as the Denis Campau under whom plaintiffs claim had been dead for more than thirty years, it is difficult to see what bearing the form of assessment to Denis Campau as a living person could have had in their favor.

The plaintiffs asked to have two questions submitted separately to the jury. *First*—"At what date did Joseph Campau take possession of said property?" To this they

28 MICH.—39.

answered, "In the year 1835." *Second*—"By what acts did Joseph Campau claim to hold possession adversely to the plaintiffs?" This the court declined to present to the jury as too general.

The questions to be separately submitted to the jury are required to be "particular questions of fact" (*2 C. L.*, § *6026*), and these, as we have held, should be such as to involve legal consequences.—*Crane v. Reeder, 25 Mich., 303.* We think such a question as that which was put here could not, be fairly called a particular question of fact, and it is difficult to imagine any answer that could have had any controlling force in reaching a conclusion. And it is quite evident that allowing such a question would not come very far short of requiring the jury to find a special verdict rather than a particular finding. Upon particular questions they may be expected to be able to find distinctly, as to all their attention is called to. But no jury can be expected to respond to any such sweeping inquiry, without the likelihood of introducing some irrelevant matter, or leaving out relevant facts which they would have found had their attention been expressly turned to them. Such questions are ensnaring, and not conducive to certainty. The court properly refused to put the question.

The case finally turned upon a general charge, or series of charges, whereby the court instructed the jury that if they found that Joseph Campau had occupied the property for more than twenty years, without any claim by the plaintiffs or their ancestors to a share of the rents and profits, and without actual acknowledgment of the rights of the plaintiffs or their ancestors, and with the knowledge of the latter, then they are well warranted in presuming any thing in support of defendant's title, and they may presume either an actual ouster of the plaintiffs and their ancestors by Joseph Campau, or a conveyance by them to Joseph Campau. Joseph Campau being in possession, he and his heirs are presumed to have had a good title, and the burden of proof is upon the plaintiffs to show title in them-

selves. The mere fact that a deed of the premises was given to their ancestors more than fifty years before this suit was brought, is not enough to entitle them to recover.

The effect of this was, and was intended to be, that the jury might, upon finding the facts mentioned, give a verdict for the defendant; or, in other words, that upon those facts his possession and claim should prevail.

It is not therefore very important whether the presumptions were nominally referred to conveyances, releases, or any other bar to the plaintiffs; inasmuch as the defendant was only to prevail by reason of his long and undisturbed enjoyment; and that, if sufficient, would be sufficient without the aid of any specific presumptions, and would not be prejudiced by the existence or non-existence of presumable grants or releases.

The case may properly enough be treated as involving no more than would have been involved had no reference been made to any rights or presumptions which would not have arisen in any case of ouster and adverse possession. A general direction, such as was given here, would be correct if sustainable on that basis, and was not really sought to be placed on any other. The question on which the case turned, so far as it was presented under the ruling chiefly complained of, is whether upon certain facts stated, the inference of the tenant's right is one of fact or of law. The jury were very clearly and carefully informed that the question of adverse possession was one of fact for them. The only point on which the charge can be supposed to have taken any thing away from them is the effect of a long possession without interference or claim from the alleged co-tenants. The court did not assume in any way to pass upon any of the facts, but merely told the jury that if certain facts existed they would be warranted in making the presumption that Joseph Campau . had a title by ouster or conveyance. I am by no means sure that the form of this charge did not leave all questions to the jury which are referred to in any of the authorities as jury

questions, upon the theory of the narrowest rules.   But it is not very important, because I think the court might quite as properly have directed the jury if they found those facts to bring in a verdict for the defendant.

The plaintiffs, who claimed as tenants in common with defendant, by descent or grant under a common ancestor, Denis Campau, had themselves shown a state of things which left little, if any, occasion for defendant to prove any thing.   They showed that Denis Campau died seized in 1818, and that the premises had been continuously occupied since 1814 to the trial.   They showed further, and the jury found expressly, that Joseph Campau took sole possession in 1835, and held possession, and gave leases and received rents, and paid taxes till his death in 1863, and his heirs since his death had so continued up to the trial,— a period of twenty-eight years in his lifetime,—and a continuous possession altogether, in the same right, of about thirty-seven years before suit.   The charge complained of did not hold this possession alone as necessarily warranting any presumption of title, but told the jury it would do so if the possession of Joseph Campau had been continued more than twenty years "without any claim by the plaintiffs or their ancestors to a share of the rents and profits, and without actual acknowledgment of the rights of the plaintiffs or their ancestors, and with the knowledge of the latter."

It is admitted that if these facts induced the jury to to believe the possession was held by Mr. Campau in his own sole behalf, they must have been bound to give a verdict for defendant.   But if this would have been warranted (as all authorities agree it would), it is difficult to see why, if they had found the same facts by special verdict, that verdict would not have entitled defendant to judgment.

The only occasion for the intervention of a jury is to draw inferences from disputed facts, or facts leading by themselves to no one presumption rather than to another. But in treating any of these facts such legal presumptions

as arise from any of them, or which bear upon the issue, must be given their full effect. · And when any facts are found which, in combination with such legal presumptions, lead to one result, that result is one of law, and not open to the discretion of a jury. A special verdict containing them would be sufficient to warrant a judgment.

A plaintiff in ejectment has always the burden of making out a complete right. If he leaves his case open to such doubt that the facts are just as consistent with the defendant's right as with his own, he must be defeated. He must always show a right which necessarily negatives that of any one else.

In order to give one tenant in common the benefit of another's possession, that possession must have been taken as a common, and not as a sole possession. The mere fact of possession is of no special weight. It depends upon the circumstances. If a person enters avowedly as a tenant in common, it would require some state of things indicating a change of intention before the character of the possession could be altered. But where possession is not so taken it would not be reasonable to require the same amount of proofs to justify its treatment as a sole possession. And it certainly devolves upon the plaintiff in ejectment to establish the fact in some way that within the statutory period of limitation the defendant or his ancestor had been in possession in their common right, and not in his own right.

When an original entry was really· made as a sole entry, the only way in which its nature and purpose could usually be proved would be by the use of the land in the same way in which sole owners commonly use it. It is only when there has been a change in the character of the holding that the tenant can be expected to show the change. And if a person acts from the beginning, just as he would act where he had an undisputed title, it would not be proper to presume he held on any other basis. When a tenant in common enters on land in that way and so

continues, there is no reason why his sole management and possession should not put co-tenants as well as others to the duty of at least inquiring to ascertain whether he denied their rights.    No man in his senses is in the habit of making verbal or conspicuous manifestations and professions unless a controversy arises, or unless he is changing his position.    An unchanged enjoyment is the best possible evidence of an unchanged intent.

The object of statutes of limitation would be defeated if a tenant in possession could be compelled to go back indefinitely and prove any thing anterior to his uniform and exclusive possession during the statutory period.    The law presumes that in that time evidence will probably be lost, or at least may be so, and that a party who has been entirely inactive during that period should have all the risk and burden thrown upon himself of proving what will overcome the defendant's right by possession.

Take the present case as an example.    Joseph Campau, if sued in his life-time, would have appeared, by plaintiffs' own showing, to have been in possession of the lands in controversy for eight years beyond the statutory period, acting in all respects as he acted in regard to any other lands in which there never had been any common estate. If sued by an adverse claimant for such other lands, the possession would be conclusive, unless shown to have been held under that claimant's right and title within the time of limitation.    The possession could be shown not to have been really adverse, but the presumption would be otherwise.    It would be as difficult for him to show the facts against a tenant in common as against any one else; and there is the same reason why such a tenant should look after his rights within twenty years, as well as any one else.    The charge, in this case, did not require any more than this, and only authorized a verdict upon the finding that both plaintiffs and defendant had for all that time treated the property as they would if it had been confessedly defendant's.    For twenty years acquiescence in the

defendant's possession is not all that was to be found. It was required of the jury to take with this the entire absence of any of those steps which are incumbent on every land owner in good faith, if he desires to retain his inheritance. The rents and profits of land cannot be sued for except within a short period. The law cannot presume that a man having such claims will uniformly neglect them. The taxes are a lawful burden which the owner is bound to pay or see paid. The law will make no presumptions in favor of violators of the law. When a tenant in common, out of possession, acquiesces in the exclusive enjoyment of the person in possession for twenty years, and neither enters nor tries to enter, and neither seeks the rights nor performs the duties of a land owner, the presumptions against him ought to have their full force. It is as easy for him to prove the possession to have been subject to his rights as for the possessor to make proofs to the contrary, and when he invokes the interference of justice in his favor, he should be compelled to prove his case.

In most of the cases where the lapse of time has been held to warrant a presumption in favor of the tenant in possession the facts have been less favorable than here. Usually the reports show that there had been originally a possession under acknowledgment of the co-tenancy, and the defense rested on the presumption of an ouster or release thereafter. But here there is nothing to warrant the inference that the possession was ever any thing but adverse. There was a lapse of more than fifteen years between the death of Denis Campau and the entry of Joseph Campau; and the property had never been vacant. If this does not affirmatively show a change from a previous common to a several possession, it certainly has no tendency to show that the entry was not in a sole right. And inasmuch as an entry on behalf of all is the only thing which could under any circumstances raise any presumption of a subsequent holding in the same behalf, the

lapse of time with no assertion of right by the other tenants in common is very much more convincing than if it had appeared their title had ever been recognized.

Putting all these facts before a jury, unless the presumption of title is one of law, the result must be very strange. How can they, if the question is open as one of fact, find any means of telling without proof whether there was ever a common tenancy recognized, or if so, when and how it was changed. It would be mere guesswork, and there is no case in which a jury can be allowed to draw inferences of fact without evidence tending to prove the fact. In the absence of evidence the decision must always be against the party on whom the burden of proof rests.

In *Doe v. Prosser, Cowp., 217,* the case was put to the jury in substantially the same way as here, and the form of the charge given by Judge Patchin is the same, so far as relates to this question, as is recognized as proper in the opinions delivered by the king's bench. The judges evidently understood that they were dealing with a presumption of law and not of fact. And such has been the view taken by the best American authorities. In *Cummings v. Wyman, 10 Mass., 464,* the court said that a contrary finding would have been erroneous and against evidence. In *Rickard v. Rickard, 13 Pick., 251,* it was held that the jury "*ought*" to make the presumption, and it was not spoken of as open to any other course. In *Vandyck v. Van Beuren, 1 Caines, 84,* and in *Jackson v. Whitbeck, 6 Cow., 632,* the presumption is expressly declared to be a legal presumption. The discussion in *Clapp v. Bromagham, 9 Cow., 532,* is also very plain on this point.

The ambiguity of language which may have seemed to permit the reference of the question to a jury is more apparent than real. No case was found by the learned counsel for the plaintiffs in error favoring the application of such a doctrine. If juries should find against such a presumption, the best authorities agree that the verdict could not be allowed to stand. If the right to pass upon

the presumption is with the jury, it would be a bold assumption for a court to interfere with it. And it would not only involve a different mode of dealing with cases in no way distinguishable (which would be trifling with justice), but it would introduce into jury trials the right to draw conclusions by pure guesswork, and without any evidence; which would be equivalent to allowing them to give the estates of suitors at their option and caprice, and not according to right.

I think that all the analogies of the law require such presumptions to stand as conclusive until rebutted by proof, and to govern both courts and juries as matters of right and not of discretion; and that the judgment should be affirmed, with costs.

GRAVES, J., concurred.

CHRISTIANCY, CH. J.

While I agree fully with my brother Campbell upon some points, and in much that he has said upon others, there are some principles which he has laid down as law, in the correctness of which I cannot concur; and while the differences between us might not ultimately be of great practical importance to the final result of this case, since, if submitted to the jury upon the principles which I deem correct, the verdict would very probably have been the same; yet, to avoid errors and confusion in cases which may hereafter arise, I think it important that just results should be reached through the application of correct principles.

The evidence tended to show that Denis Campau died seized of the premises in 1818, leaving several brothers and sisters his heirs; that plaintiffs, as the children of two of his brothers, were the heirs of one-third interest in the premises; that said premises have been occupied since 1814, but it does not appear by whom prior to 1835; that Joseph Campau, who died in 1863, was a brother of said

28 MICH.—40.

Denis, and owned at the time of his death, by inheritance from him, and by purchase of the interests of other heirs, the balance of the title; that Joseph Campau had possession from the year 1835 to the time of his death in 1863, gave leases, received rents and paid taxes from year to year, and that his heirs, and defendant, claiming through him, have had possession since.

The main question, and as I think, the only one necessary to the decision, and with reference to which only the other questions become important, is that of the statute of limitations. If the possession of Joseph Campau, or his and that of his heirs together, had been adverse to the plaintiffs and their ancestors for twenty years or more before the institution of this suit (February 20th, 1871), then their rights were barred by the statute; otherwise not. And by an adverse possession I mean a possession under claim of title, hostile to and in defiance of the rights of the plaintiffs, and those under whom they claim.

In a case where the plaintiff does not claim as tenant in common with defendant, or rather when the evidence does not *prima facie* show that the documentary or legal title was such as to make the party in possession a tenant in common (or joint tenant) with the plaintiff or those under whom he claims, at the time when he entered into possession, the mere open, notorious and exclusive possession, use and enjoyment of the property, in the same manner as if he were the owner, for the requisite period of time, would, as matter of evidence, furnish a strong natural presumption or inference, that he claimed to hold it as his own, and therefore adversely, unless there were something to show the contrary. And in such case, if any where, this presumption would approach the character of a legal presumption. He stands in no fiduciary relation, and there would therefore seem to be no very strong grounds for presuming that he held the possession for the benefit of a party out of possession. And yet, even in such cases, by the great weight of authority, it is not the fact of taking

and holding the exclusive possession for the requisite period, which makes 'it adverse, but it must have been with a claim of right and the intention of holding it as his own, or it will not be adverse.    The question of adverse possession is, therefore, even in such cases, one of mixed law and fact.    The court are to instruct the jury as to the principles of law involved, but the *quo animo*, the intention with which the possession is taken or held, and which is to be inferred only from the facts and circumstances in evidence, is a question of fact exclusively for the jury.—See *Angell on Limitation (2d ed.), pp. 410 to 416, especially cases cited in note 2, p. 414, and authorities there cited.*    And it must be a very clear case indeed in which the court would be authorized to instruct the jury that if they should find certain specified facts and circumstances (however strong and tending to show the *quo animo*) they must find the party held with the intention of claiming the property as his own, and therefore adversely, or in which the court,. upon a special verdict finding such facts and circumstances, would have the right to draw the inference of adverse holding as one of law.

But where the evidence (aside from the inference to be drawn from the use and enjoyment of the property) all shows that the person in possession was, at the time of taking it, and afterwards, a tenant in common of the title with the plaintiff and those under whom he claims, the inference in favor of the adverse character of the possession, to be drawn from the possession, use and enjoyment . for the like period of time, is by no means so strong as in the case where no such tenancy in common of the title exists; nor do all the same presumptions arise; and the two classes of cases cannot be placed upon the same ground, in respect to the burden of proving the character of the possession by the like evidence, nor can all the same inferences be drawn from the same period of exclusive possession, in both classes of cases, without disregarding the very nature of a tenancy in common, and the unbroken.

·current of authorities from the earliest period down to this ·day.

In some respects, it is true, both classes of cases are alike; it is for the plaintiff in both to make out his own title; in both, however, when the documentary or legal title appears from the evidence to be in the plaintiff, and the defendant relies only upon an adverse possession to ·defeat it, the burden is on him to show all that is essential to make it adverse.—*Rowland v. Updike, 4 Dutch., 101; 3 Wash. R. Pr., p. 129, paragraph 25.* But tenants in common sustain towards each other a relation which is, to some extent, fiduciary. The possession of one is deemed to ·be the possession of all the tenants in common.—*Coke, Lit., 199 (b) ; 2 Cruise Dig. (by Greenleaf), Title 20, § 14; 1 Wash. R. Pr., pp. 566–567; 3 id., p. 128, § 124,* and all other works upon this branch of the law. And as tenants in common of the title are equally entitled to a possession extending over all the common property, and the law presumes until the contrary is shown, that one of them going into and remaining in possession of the whole, intended to act honestly rather than dishonestly towards his co-tenants, in accordance with, rather than in hostility to their rights, it must, in the absence of contrary proof, presume that he holds possession, not only for himself but for his co-tenants. And such accordingly is the presumption which the law raises, both as to the taking and continuance in possession until the contrary is shown by proof to the satisfaction of a jury. See authorities above cited, also *3 Phil. Ev., Cowen, Hill & Edwards, 583 ; Knox v. Silloway, 1 Fair. (Me.), 201; Humbert v. Trinity Church, 24 Wend., 587 ; Thornton v. York Bank, 45 Me., 158 ; McClung v. Ross, 5 Wheat., 116 ; German v. Machin, 6 Paige, 288 ; Colburn v. Mason, 25 Me., 434; Lloyd v. Gordon, 2 Har. & McH., 254; Allen v. Hall, 1 McC. (S. C.), 131; Barnard v. Pope, 14 Mass., 434; Brown v. Wood, 17 Mass., 68 ; Catlin v. Kidder, 7 Vt., 12 ; Thomas v. Hatch, 3 Sumner, 170 ; Clyner v. Dawkins, 3 How., 674; Story v.*

*Saunders,* 8 *Humph.,* 663 *;* Jackson v. *Tibbits,* 9 *Cow.,* 241 *;* Jackson v. *Brink,* 5 *Cow.,* 483.

To make such possession of one tenant in common, therefore, a bar under the statute to an action by a co-tenant, it must, as in all other cases, of course be affirma-tively shown to have been adverse; and this, in this class of cases (unless the original entry be shown to have been so), can only be shown by an actual ouster or disseizin prior to the statute period, or such a state of facts as is equivalent to an ouster. As the tenant thus in possession had a legal right to enter, and the co-tenant had no right to object to his entry, such entry of itself can be no notice to the co-tenant of any invasion or intended invasion of his rights; but he has a right and is bound to infer that he entered under his right as tenant in common, and if the premises were before vacant, that the entry and possession will enure to his benefit as well as that of the tenant thus entering, and that his own rights will be accorded to him when demanded. And whether the co-tenant against whom the possession of another is set up, was himself in or out of the possession previous to the entry of the other, as he could in neither case object to the entry or possession itself, though made or held with a claim of the whole; it would seem to require a very peculiar state of facts which would make the entry itself constitute a disseizin or ouster. If one tenant be already in when the other enters, there could be no ouster or disseizin without actually turning him out, however hostile the claim under which the entry was made; but if the premises were vacant, and the entry even made by one with the knowledge of the other, expressly under some title or claim of title wholly adverse to the title in common, and with the avowed intention of holding it as his own and in defiance of any right of the other, so that the one out of possession would have fair notice that his own entry or claim of right would be resisted, and that he must resort to a suit to obtain them; this might be treated in effect as an ouster; and there are some few

cases which have so held.    But cases of this kind seldom happen, and the question of the adverse nature of the possession or of an ouster, must generally (as in the present case, where the evidence is silent as to any acts or declarations accompanying the entry) depend upon the acts or conduct of the party, or of both parties, after the entry has taken place.    The possession could therefore generally become adverse to the co-tenant, only by subsequent hostile action, as by actually ousting the co-tenant if already in ; and, if not, then by claiming the whole against him, refusing to permit him to enter, denying his rights when he should demand their enjoyment, or in some way, in short, which renders the possession hostile in fact, so as fairly to notify him that he could no longer rely upon the presumption of his holding as tenant in common, upon which (until some act fairly giving this notice) he had a right to rely, and that he is to be driven to a suit for the recovery of his rights.—See *Roberts v. Morgan, 30 Vt., 319; Holley v. Hawley, 39 Vt., 534; Doe v. Bird, 11 East, 49; McClung v. Ross, 5 Wheat, 116; Dexter v. Arnold, 3 Sumn., 152; Bracket v. Norcross, 1 Greenleaf, 89; Harpending v. Dutch Church, 16 Pet., 455; Willison v. Watkins, 3 Pet., 52; Zeller v. Eckert, 4 How., 297; Jackson v. Tibbits, 9 Cow., 244; Ricard v. Williams, 7 Wheat, 121; Hogsett v. Ellis, 17 Mich., 351.*

From the fact that the tenant out of possession, until some hostile claim and action of the tenant in possession indicating the contrary, has the right to rely upon the presumption that the entry and possession of the other were in accordance with the title and as tenant in common, and that his own rights will be accorded to him when he may choose to demand them, it follows that such tenant out of possession cannot be held to the same promptness of diligence in asserting his rights as in cases where no such tenancy in common of the title exists.

The statute of limitations in barring a right of action is based upon the idea of the acquiescence of the party out of possession, in the hostile or adverse possession and enjoy-

ment of the property by another; it therefore involves the idea of notice to the party out of possession, of such adverse enjoyment by the other; and especially in the case of a tenancy in common, that the tenant in possession (to which he has a right) is doing acts and asserting claims hostile in their nature to his own.   In cases where no such tenancy exists the possession may be so open and notorious, and the mode in which the possessor deals with the property of such an open and unequivocal character, as to be properly held to be constructive notice to the owner, of the possession and its adverse character.   And though it is possible there may be cases in which the acts of a tenant in common in possession, and the notoriety of the hostile nature of the possession, may be such that notice to the co-tenant might be implied, yet as the tenant in common in possession as such, may rightfully in almost if not in all respects treat the property as if it was his own, there can be but very few cases in which his mode of using and enjoying it could of itself be held to operate as such notice.   And in such case, therefore, when the entry is not shown to have been under an adverse claim of right, the acts of a tenant in possession, to amount to an ouster of the co-tenant, must be substantially such as would constitute an ouster of a landlord by his tenant, or of one to whom he stood in some other fiduciary relation.—*Holley v. Hawley, 39 Vt., 534; Roberts v. Morgan, 30 Vt., 319.*

It is well settled that neither the sole possession by one who is tenant in common nor his reception and appropriation of all the rents and profits, will amount to an ouster.—*2 Cruise Dig. (by Greenleaf), Title 20, Secs. 14, 15, and 16,* and cases there cited; nor will the failure or even the refusal to account to the co-tenant for his share of the profits, unless the refusal is based upon a claim of right to the whole, and denial of the right of such co-tenant.—*Doe v. Prosser, Cowp., 217; Doe v. Bird, 11 East, 49; Fairclaim v. Shackleton, 5 Burr., 2604.*

And as the reception of the whole rent will not consti-

tute an ouster, so neither would the abstract fact of giving leases; as rent pre-supposes a lease of some kind, and there can be no difference in principle, whether the occupancy be in person or by tenant, unless, possibly, when the lease might be for a great length of time, or contain some pecu- liar provisions clearly inconsistent with any rights of a. co-tenant. What the leases were in this case, whether verbal or written, or for what time, we are not informed. And certainly the payment of taxes cannot either alone or with the possession and pernancy of the profits consti- tute an ouster, nor any evidence tending to show one ; since a tenant in common in possession of the whole is here bound by law to pay the taxes on the whole.

These are all the acts of Joseph Campau which the evidence tended to prove; and it is very clear that no one of them alone, or all of them together, can be held, *proprio vigore,* to amount to an ouster in law; and except as connected with the consideration of the great length of time during which the possession and reception of the profits continued, without his being called upon by the plaintiffs or their ancestors for any share of the possession or profits, these facts would not even tend as evidence to prove an ouster; as without reference to the great length of time and neglect or acquiescence, all these acts were equally consistent with a holding as tenant in common in harmony with the title of the co-tenants.

No evidence appears to have been given tending to show whether the plaintiffs or their ancestors ever called upon Joseph Campau, or his heirs, or the defendant, after his death, or demanded their share of the possession or of the rents and profits, or not; and in the absence of all evi- dence, the law cannot presume any such demand. And since if there was any such demand more than twenty years before the institution of the suit, and it was refused by Joseph Campau on the ground that he claimed the property as his own, it would have amounted to an ouster; the defendant would have been interested to prove it, to

bring the case within the statute of limitations; and if a demand had been made and refused on some other ground than that of a claim of title, and therefore not amounting to an ouster, the plaintiffs would have been interested to show it, to rebut the idea of acquiescence for so long a period; we may safely assume that no such demand was made, nor any efforts of the plaintiffs or their ancestors to assert their right to the property from 1835 down to February, 1871, a period of some thirty-six years.

We are now to consider how this neglect of the plaintiffs and their ancestors, for so long a period, to demand their share of the possession or rents and profits affects the case in view of the circumstances in proof. And as the cases are not entirely harmonious (though generally involving substantially the same principles), it is proper to look to the principles involved. As a general rule it is safe to presume that men will act in accordance with their own obvious interests, and will not surrender their rights or the enjoyment of their property to another having no just claim, without compensation in some form. This is a principle of human conduct which experience has shown to be generally reliable; it is equally recognized by courts in the administration of justice, and by the world at large in the ordinary affairs of life. Upon this principle the continued neglect or forbearance of the plaintiffs and their ancestors to demand or assert their rights in any form, and their acquiescence in the enjoyment of the property and its income for so long a period, furnishes grounds for the inference, and is therefore evidence tending to show, that the plaintiffs and their ancestors were conscious, and must have been satisfied that Joseph Campau was entitled of right to the sole use of the property and its income as against them, and also, in this manner, to show that whatever interest they might once have had had been released or conveyed, or for some good reason given up to him, though without a release or conveyance of record, and that they, therefore, knew that he was holding the property

28 MICH.—41.

rightfully as his own, and under a claim of title to the whole, which was recognized and acquiesced in by them. This would of course make the possession adverse and constitute an ouster, and would also tend in some degree to show that such had been the position of the parties from the commencement of Joseph Campau's sole possession; as this would best account for and explain the conduct of all the parties. In this view the neglect, forbearance and acquiescence for so long a period, merely create a natural presumption or furnish an inference of fact, in other words, presumptive or circumstantial evidence tending to prove a conveyance or ouster; which, like other circumstantial evidence, is to have weight according to its greater or less tendency to produce in the minds of the jury actual belief that such was the fact. And it would be quite immaterial whether the jury should believe that this neglect or acquiescence had been for the reason that a deed or release had been given, or some agreement or understanding had, by which Joseph Campau's right to the whole was recognized, or whether without such deed, release or agreement, they should believe that the plaintiffs and their ancestors knew that his possession was under an adverse claim of right to the whole, or that without gross negligence and inattention to their own interests they must have known it; as in either view the possession must be regarded as adverse and known to be so. In this view it seems to me obvious that the strength of the presumption, the force of the inference from such evidence, must depend much upon the situation of the parties, the nature of the property, and the surrounding circumstances in each particular case. If the tenants out of possession were absent from the country, without opportunity to know the facts, or under the influence of the party in possession, or kept in ignorance of their rights by him, etc., the inference would be less strong than under an opposite state of facts. It might also depend much upon the value of the use of the property, the amount of its income as compared with taxes

and necessary expenses.    For if the income was not more
or much more than sufficient to compensate the taxes and
other necessary expenses of managing the property, the
co-tenant would be less interested to call for his share of the
profits, and might be willing the tenant in possession should
continue to receive the income and pay such taxes and
expenses; when if the income were much greater it would
be. clearly for his interest more promptly to demand
participation.    If, on the other hand, it appeared that the
tenants out of possession, were living for the whole period
in the vicinity, that they knew, or without gross neglect of
their own interests, must have known their rights, and that
the other tenant was in the sole possession and enjoyment
of the profits, that these were largely in excess of taxes
and expenses; that they were in no way deceived or kept
in ignorance of their rights by him, and that up to the
time when such sole possession commenced, the plaintiffs
and their ancestors had been in the possession or enjoy-
ment of the property; the inference would be very strong
and convincing, that they knew he was holding the property
adversely to them, and that for some good reason they
deliberately acquiesced and recognized his right to the whole,
and that there had therefore been an ouster more than
twenty years before.—See *Mathews Pr. Ev.*, (*marginal page*)
*10*.    Upon proof of such a state of circumstances, I
should agree that, if a jury were to find there had been
no ouster, or that the possession had not been adverse, the
verdict ought to be set aside as against evidence.

But in the present case we have no proof of special cir-
cumstances under which the delay and acquiescence took
place, and there being no evidence characterizing the origi-
nal entry into sole possession, except what may be inferred
from the long acquiescence; and as tenants in common out
of possession cannot be held bound to the same promptness
in asserting their rights as persons in other cases, but have
a right to presume, till something appears to indicate the
contrary, that the possession and enjoyment are according

to the title; and the inference of a deed or ouster, or that the possession is adverse, can only be drawn from their acquiescence in the possession and enjoyment by another for an unreasonable length of time without calling for a share of the rents and profits; and what would be a reasonable time must depend upon the circumstances of each particular case; and the statute allows the parties any period short of twenty years to bring suit, even after the possession may be known to be adverse; it seems to me very clear, *first*, that the presumption or inference in question is necessarily one of fact to be drawn by the jury in the same way as they may infer any other fact from circumstantial evidence tending to prove it; *second*, that the jury can only be authorized to draw it from such delay or acquiescence when the length of time has been somewhat more than that required by the statute of limitations, and except under very peculiar circumstances considerably beyond that period.—See *Doe v. Proser, Cowp., 217; Peaceable v. Read, 1 East, 568; Taylor v. Horde, 1 Burr., 111; Doe v. Hellings, 11 East, 49; Frederick v. Gray, 10 S. & R., 182; Bolton v. Hamilton, 2 Watts & Serg., 294; Hart v. Gregg, 10 Watts, 190; Jackson v. Whitbeck, 6 Cow., 632; Northrop v. Wright, 24 Wend., 221; Thomas v. Garvan, 4 Dev. (N. C.), 223; Parker v. Proprietors, etc., 3 Metc., 100; Cummings v. Wyman, 10 Mass., 464; Lefavour v. Homan, 3 Allen, 355; 1 Wash. R. Pr. (3d ed.), 567; 3 id., 128.* So far as some of the cases in Pennsylvania may seem to decide that the possession by one tenant in common for the period fixed by the statute of limitations would of itself be sufficient to warrant the presumption, I do not think they can be supported upon any sound principle. *Third,* for the same reasons I think it also clear that the court cannot raise the presumption or draw the inference as one of law. The court cannot say, because one tenant has been long in sole possession, that the original entry must have been adverse to the others, nor at what particular period a possession originally consistent with the co-tenant's rights,

first became adverse, nor consequently in the present case, that it became so twenty years before the suit was instituted.    And to hold that twenty years' sole possession and pernancy of profits by one of the tenants, without the assertion of a claim by the other, necessarily makes the possession adverse for the whole period, and brings the case within the statute, is to ignore the distinction in this respect between estates in common and sole estates, which has always been recognized since statutes of limitation have been known.    It is nothing less than the enactment by the court of an arbitrary period of limitation for a class of cases for which the legislature did not see fit to enact one.

It might be said with more appearance of reason in the present case that, though the tenants out of possession cannot be held to the same promptness in demanding their rights of the co-tenant in possession, as in cases where no such tenancy is claimed to exist, and could not, therefore, be held bound to the twenty years applicable to other cases; and though the court cannot lay down any precise period within which they must demand participation in the possession or profits, yet that the delay for the period of sixteen years prior, and in addition to the statute period, is more than could *prima facie* be deemed reasonable under ordinary circumstances, to forbear making such demand, if they believed they had any rights in the land; that such delay could therefore only be justified by some special or extraordinary circumstances, and that the burden of proving such circumstances should be thrown upon them, when they seek to assert their rights after so long a time.    But this reasoning would seem to be open to the objections, that it assumes that the law defines, and the courts can judicially say, what are the ordinary and what the extraordinary circumstances accompanying the possession by one tenant in common who does not deny the right of the others, and that it fixes an arbitrary period which shall be deemed reasonable in ordinary cases, and that it reverses

the general rule of the burden of proof. But subject even to these objections, it would, in my opinion, be much safer and less likely to prove injurious, than to hold the presumption of a deed or ouster to be one of law, or than to break down all distinction between tenancies in common and other cases, in reference to adverse possession and the statute of limitations.

That what is called the presumption of an ouster, or of a deed or release, in a case like this, is not a presumption of law which the court can draw, but that it must be submitted to, and found by, the jury, in some way, seems to be settled by the general, and I think I am warranted in saying, by the uniform, current of authorities.

*Mathews on Presumptive Evidence* treats it as a presumption or inference of fact to be drawn from "the particular circumstances of individual cases; and yielding a kind of indirect or presumptuous evidence of their existence:"—*p. 186, 188, and p. 11* (though he erroneously cites *Doe dem. Fisher v. Prosser* as holding that possession for twenty years by one tenant in common with an exclusive appropriation of the profits afforded the presumption of a conveyance: the possession was 36 years, and it was left to the jury, if they thought the evidence warranted it, to presume an ouster). *Greenleaf,* in his work on evidence, *Vol. 1, sec. 44 to 48,* speaks of it (as I have done) as not in any proper sense classed as a presumption, but as "a mere argument of which the major premise is not a rule of law," and to be judged by the common and received tests of the truth of propositions and the validity of arguments." And he says, in reference to these inferences, the jury "are usually aided in their labor by the advice and instructions of the judge, more or less strongly urged at his discretion; but the whole matter is free before them, unembarrassed by any considerations of policy or convenience, and unlimited by any boundaries but those of truth, to be decided by them according to the convictions of their own understanding" (§ 48). And neither Mr. Starkey nor Mr. Phillips treats

it as a presumption of law in any case, but both admit that
the presumption of a grant, release, conveyance, or ouster,
is one which must in all cases (at law) be found by a jury,
and cannot be raised or applied by the court.    There are
various classes of cases where a grant, release, conveyance,
surrender, and perhaps ouster, may be presumed or inferred
in cases and for purposes having no connection with the
statute of limitations or the question of adverse possession,
in which it has been customary for the English courts to
advise the jury more or less strongly, and even sometimes
to instruct them to find such presumption.    This is true
of the presumptions of a conveyance from a trustee to a
*cestui que trust* in possession, or the surrender of outstand-
ing terms, etc., where, as Mr. Phillips says, "although they
must be submitted to the jury, yet, in point of fact, they
will ordinarily be decided upon principles of law by the
judge;" in other words, the court strongly advises or in-
structs the jury that they find the presumption, rather as
matter of course and without reference to their actual
belief.—*1 Phil. Ev. (by Cowen, Hill and Edwards), p. 673.*
But this is not done in cases like the present, and as stated
by the same author (which is precisely applicable here):
"But when the *original* possession of property may be
accounted for and is consistent with the fact of there
having been no conveyance, it seems proper to direct a jury
to presume a conveyance, or not, according to their actual
belief on the subject."—*id. p. 672.*    And *Doe on demise of*
*Fenwick v. Reed, 5 B. & Ald., 232,* very clearly and em-
phatically shows that in cases like this the presumption is
one of fact exclusively for the jury, to be determined only
according to their actual belief. *Bailey, J.* had so left it to
the jury, and *Abbot, C. J.,* in giving his judgment, says:
"I am clearly of opinion that the direction was according
to law.    In case where the original possession cannot be
accounted for, and would be unlawful unless there had
been a grant, the rule may perhaps be different, and all
the cases cited are of that description.    Here the original,

possession is accounted for, and is consistent with the fact of there having been no conveyance.    It may indeed have continued longer than is consistent with the original condition.    But it was surely a question for the jury to say whether that continuance . was to be attributed to a want of care and attention on the part of the Charleton family, or to the fact of there having been a conveyance of the estate."    And in conclusion he says: "I think the point presented to the jury was the correct one.    In my opinion, presumptions of grant and conveyance have already gone to too great length, and I am not disposed to extend them further."    And Bailey, J. says: "I thought at the trial, and think still, that the question for the jury was, whether in fact a conveyance had ever been made."    See also *Livett v. Wilson, 3 Bing., 115; 10 Moore, 439; 3 Man. & Ryl., 239; Hill v. Crosby, 2 Pick., 466.*

The present case comes directly within the principle here laid down.    Joseph Campau's original possession was lawful, and sufficiently accounted for as tenant in common.

Mr. Starkey, in reference to presumption of grant, etc., in ordinary cases (though there is nothing to show that he intended to extend the doctrine to cases where the possession was originally lawful, any more than Mr. Phillips does), seems to hold that the court may advise, and sometimes even instruct and direct the jury to make the presumption, yet he admits that if the jury do not find it, the court cannot do it.—*Vol. I. (6th Amer. ed.), p. 76; Vol. II., p. 683–684.* He calls it a mixed presumption of law and fact.    But (though I do not mean to discuss the question as applied to the presumption of deeds, etc., generally, nor beyond cases of the kind now before us) it must, I think, in principle, be one or the other, and not a mixture of both, in any other sense than all inferences of fact from circumstantial evidence are so.    The court are to determine the admissibility and tendency of evidence·  If a presumption of law, the court should draw it from the particular facts and circumstances, where these may be

found by the jury, which he admits they cannot do. If a presumption of fact, to be drawn from the evidence, the jury must draw it, and not the court. If he means by a mixed presumption a presumption or inference of fact, which the jury are to find under the direction of the court, without believing it, or even against their belief, then I strongly doubt the power of the. court to give such instruction, or the right of the jury to follow it, in any case, and have no hesitation in denying it in cases of the class now before us. But in reference to this class I shall return to this point again.

The only authorities relied upon here to show that the presumption is one of law, are the following:—*Cummings v. Wyman, 10 Mass., 464; Rickard v. Rickard, 13 Pick., 251; Vandyck v. Van Beuren, 1 Caines, 84; Jackson v. Whitbeck, 6 Cow., 632; and Clapp v. Bromagham, 9 Cow., 532.* In *Cummings v. Wyman* the question arose upon the report of a referee which found an adverse possession. The court considered the case upon the evidence returned, and confirmed the finding (the question arose precisely as it would upon a motion for a new trial). The evidence was direct and positive of facts which of themselves constituted an actual ouster long prior to the statute period, and showed affirmatively that the possession was adverse, and there was no evidence of an opposite tendency. And the remarks of the court, that if the case had been submitted to a jury and they had found the other way, the verdict would have been set aside (though unnecessary and by way of illustration), was well founded. But an actual ouster and adverse possession being affirmatively shown by direct evidence, without any evidence to the contrary, there was no room for, and no need of, any presumption; and all that is said upon that point is a mere *dictum.* The court however *expressly* treats the presumption as *one of fact,* not *of law,* so that the case as well as the *dictum* is directly opposed to the doctrine for which it is cited here. *Rickard v. Rickard* also *expressly* holds the presumption to be one

28 MICH.—42.

*of fact,* to be found by the jury from the evidence. But it is remarked, "it is well settled, that a long, exclusive and uninterrupted possession by one, without any possession or claim of profits by the other, is evidence from which a jury may and ought to infer an actual ouster." The case was a petition for a partition, where the court, like a jury, considered it upon the weight of the evidence, and found, as any sensible jury must have found from so long a period of exclusive possession *under a claim* of the *whole title,* (which was there shown), that the possession was adverse. And if a jury in *such* a case, and upon *such* evidence had found otherwise, I should have held without hesitation that the verdict ought to be set aside as against evidence.

*Vandyck v. Van Beuren* is the only case which I have discovered (there may be other sporadic cases and loose *dicta* to the same effect) which contains the assertion that the presumption in question is one of law, which the court may draw.

In that case the facts as stated by the court (*pp. 89 to 91*) showed clearly an adverse possession of some fifty years; so that it could hardly be necessary to presume any thing; if adverse, as all the evidence showed that it was, this was sufficient for the defense, and of course included an ouster. The jury had, on the second trial, found in favor of the defendant (which must have been on the ground of an ouster, or adverse possession which included it: the case is blindly reported), and a motion was made for another new trial. This the court denied; and I should certainly have concurred with them in denying it; but in denying it, they treat the presumption as one of law. It is easy to see that no such point was necessary to the decision, and if any thing more than a mere *dictum* it has never since been recognized as law in that state, nor elsewhere so far as I have discovered, and has in effect been repeatedly overruled.

In *Jackson v. Whitbeck* (another case relied upon here as supporting the same doctrine), where the exclusive pos-

session was accompanied by circumstances strongly showing it to be adverse in fact, this case of *Vandyck v. Van Beuren* was relied upon on the argument, but the court expressly waived the point, and held that on a verdict taken subject to the opinion of the court upon a case made, the court may draw the same conclusions of fact as a jury; and they proceeded to draw them. And *Northrop v. Wright, 24 Wend., 221; Humbert v. Trinity Church, id., 587;* and *Butler v. Phelps, 17 Wend., 642,* are utterly inconsistent with the idea that the presumption is one of law to be drawn by the court. *Clapp v. Bromagham (9 Cow.)*, as I understand it, does not hold the presumption to be one of law, but directly the contrary. The point seems to have arisen upon the charge; and the opinion holds that there being clear evidence of the exclusive adverse possession for more than twenty years by the defendant claiming the property as his own, the judge ought to have instructed the jury that if, in their opinion, an adverse possession of over twenty years was proved, they ought to find a verdict for the defendant (*p. 566*). In this I entirely concur.

So stands this question upon the authorities cited, and though there may perhaps be some few others more directly favoring the rule for which they were cited, I may safely say that no rule or principle of the law of real estate is more clearly settled by the generally uniform current of authority than that the presumption in question is one of fact to be found by the jury, and not one of law for the court. I am as much opposed to allowing ancient possession to be disturbed by stale claims as any of my brethren can be; but I am equally averse to violating the principles of law, or usurping legislative power, to accomplish the desired end, more especially when I see no reason to doubt that justice would be as readily attained by a fair submission of the question to a jury as one of fact. If our present statute of limitations is not sufficient to meet such cases without the aid of arbitrary fictions by the court, the remedy is with the legislature to make special provision for

such cases, as has been done in England by *3 and 4, W. 4,
Ch. 27, Sec. 9.*

With reference to the practice of instructing juries to
find the presumption of a conveyance, release, etc., without
reference and even contrary to their belief from the evi-
dence, in cases other than those which raise the question of
the statute of limitations, or of adverse possession as between
parties where the original possession was unlawful, I pro-
pose to consider the question of giving such instruction in
a case like the present, which raises the question of the ·
statute of limitations and of adverse possession as between
tenants in common, where the tenant in sole possession had
a right to enter without any conveyance or release from his
co-tenant out of possession.  I have already shown that the
presumption in this class of cases, is but an inference to
be drawn from the particular facts and circumstances in
evidence.  If the court have the right so to instruct the
jury, and the jury are under any obligation to follow the
instruction, and if either this obligation can be enforced in
case of their refusal, or if in case of such refusal the
court can treat it as found, or draw it themselves, then I
concede this would be the same in effect as to make the
presumption one of law.  But this would be to make its
submission to the jury an idle and unmeaning farce.  And
it would be more frank and manly, and more creditable to
the judiciary, to avoid all mere pretense, and without sub-
mitting it to the jury at all, to proceed to draw the pre-
sumption as one of law.  But, as we have seen, even the
English courts have not yet ventured to go thus far, even
in cases where they venture to give such instructions at all;
and Mr. Starkey admits the court cannot draw or apply
the presumption, if the jury fail to do so.  And it will
hardly · be contended that, if the jury fail to obey the
instruction, obedience can be enforced by proceedings for
contempt; so that the jury after all, have the same right
to refuse, that the court have to instruct.  In this view,
the power to give the instruction is not so formidable in

reality as in outside appearance, and amounts, after all, to the right to advise. But the jury, without explanation, might not so understand it; and to prevent their being awed into compliance and a violation of their oaths, it might be well for the court to act upon the advice of certain ancient players in a scarcely broader farce, and, if they cannot leave the lion entirely out, then at least to "request" or "entreat" the jury "not to fear, not to tremble," and "by prologue," or otherwise, to "tell them plainly" that what looks and roars so much like a lion is no true lion, after all, but "only Snug, the joiner."

Where there is evidence sufficient to satisfy a jury that there must have been a conveyance, release or ouster, they will naturally so find by finding that the possession was adverse, which would meet the case, if they believed that any of those facts had occurred, without reference to which of them it might be; and there is no need of any fictitious presumption. It is therefore only in cases in which the court see that there is no evidence from which the jury can find it, as a fact, or in which the evidence is so slight that the court thinks they will not be likely to infer and believe the fact, that it could be necessary to instruct the jury to presume it, or in other words, to find it without reference to their belief of its truth or falsehood, and even against their belief.

Should the court give such instruction in the class of cases we are now considering, and fully and frankly explain their meaning and object, and the theory upon which they proceed, the charge, in plain English, would read substantially thus: "Gentlemen, here is a case of long, undisturbed possession by the defendant, and those under whom he claims, which the plaintiff, though showing a paper title, we think, ought not to be allowed to disturb, a possession which the legislature ought to have protected by a statute of limitation. But unfortunately while the legislature have enacted a limitation applicable to other cases, it does not apply to a case of this kind, because it does not

sufficiently appear, from the evidence, that the possession
has been adverse; and the court, whose province is to
declare, and not to make the law, cannot so change the
law as to bring this case within it without usurping legis-
lative power.   But it is the province of the jury to find
the facts, and if you can contrive to find a state of facts
which will fit the case to the law, it will then be easy to
dispose of the case as to the court justice seems to
require.   If you can find that there has been an ouster of
the plaintiff, or those under whom he claims, at a sufficiently
early period, this would bring the case within the statute,
or if you can find that there has been a release or convey-
ance to the party in possession, the possession may also be
protected, and the end which the court think desirable be
attained.   It is true there is little or no evidence in the
case from which you can infer any of these facts as mat-
ters of actual belief.   But we cannot reach the end which,
in our opinion, justice and public policy require, without
such a finding; and, upon the principle that the end jus-
tifies the means, we advise you that you ought to presume
the fact, without reference to your actual belief of its
truth or falsehood, and though you may believe it to be
false.   And as you may hesitate to take a responsibility
apparently so grave, we will divide it with you, and as we
think it clear that it ought to be true, if it is not, we
will take the responsibility of directing you to presume it;
and you may assume that of finding it in obedience to our
direction; and in this manner neither will be really respon-
sible.   What we specially need, to enable us to dispose of
the case according to our views of justice and sound policy,
is the finding of some of these necessary facts by your ver-
dict, and when obtained, by presumption or otherwise, we
shall treat it as if found upon your actual belief derived
from the evidence."

Here is the whole process, the whole principle, or want
of principle, of such a charge.   Here is the mongrel or
hybrid presumption sometimes called a presumption of *law*

*and fact*, but which, in truth, is neither one nor the other, and embraces no element of either. The jury do not find it as matter of fact, and the court cannot as matter of fact or law,—a mere arbitrary fiction without basis of any kind.

· If it is a presumption to be found without, and even contrary to the evidence, why submit it to the jury? The only answer is, to enable the court, under cover of a transparent sham, to escape the open avowal of a clear usurpation, and this is accomplished by not only encouraging, but directing the jury to treat the oath they have taken as a mere fiction. Fictions of law may sometimes operate beneficially, but fictions of fact in the verdict of a jury ought not to be encouraged. A sham so transparent, a subterfuge so palpable, any where outside of a court of law would be treated at best with ridicule and contempt, and it is not in the power of the courts to render it respectable.

I think, therefore, the question of a conveyance to Joseph Campau, or of an ouster of the plaintiffs or their ancestors, or what is equivalent, of an adverse possession, should have been submitted to the jury as one of fact, to be found by them according to their actual belief from the evidence, like any other fact, and not as a mere fiction to be found whether they believed it or not. And· when the jury were told that if they should find that Joseph Campau occupied this property more than twenty years without any claim of the plaintiffs or their ancestors to a share of the rents or profits, and without actual acknowledgment of the rights of the plaintiffs or their ancestors, and with the knowledge of the latter, they might *presume any thing* in support of Joseph Campau's title, I think this was submitting the question as a fiction and not as a fact, and so intended to be, and that it must have been so understood by the jury. This I think was erroneous.

COOLEY, J.

Concurring in the view taken by my brother Christiancy of the legal questions presented by the record, I nevertheless assent to the conclusion that the judgment should be affirmed; but I put that assent upon the ground that under any charge that could have been properly given in this case, the jury should have returned the verdict they did, and that any different verdict should have been set aside by the court as unwarranted, and therefore no error was committed to the prejudice of the plaintiffs.

Judgment affirmed.