| 109 | 571 |
| 110 | 348 |

| 109 | 571 |
| 138 | ³223 |

CHABERT v. RUSSELL.

1. ADVERSE POSSESSION—QUESTION FOR JURY.
   Where, in an action to recover marsh land to which defendants claimed title by adverse possession, it appeared that defendants and their predecessors claimed to be the owners, and exercised acts of ownership by driving stakes to mark boundaries, by fishing, hunting, and trapping, by leasing to others, by erecting signs to warn off trespassers, and by building a dike around the land, a request to direct a verdict for plaintiff was properly refused.

2. SAME—EVIDENCE.
   A tax deed which is insufficient in itself to pass title, and assessment rolls showing the assessment of the property in the name of the grantee, and proceedings of the probate court showing that the land was treated as a part of the estate of such grantee upon his decease, are admissible, upon an issue of adverse possession, to characterize the acts of possession, on the part of such grantee and his successors, shown by the evidence.

3. SAME—HOSTILE ACTS.
   Acts of possession, in order to constitute adverse possession, must be such as, if seen by the party whose claim is sought to be divested, would clearly apprise him that the party doing the acts claimed the ownership of the property.

4. TRIAL—REQUESTS TO CHARGE—MODIFICATION BY COURT.
   Where a request to charge bearing upon an important feature of the case at issue correctly states the law, it is error for the court, in instructing the jury, to add to the statement submitted words which render it of doubtful meaning.

5. SAME—INSTRUCTIONS TO JURY.
   Where the issue is a close one from a legal standpoint, the instructions to the jury should state the law applicable to the case clearly and without ambiguity.

Error to Wayne; Donovan, J. Submitted April 22, 1896. Decided June 30, 1896.

Ejectment by Richard Chabert against John A. Russell and another. From a judgment for defendants, plaintiff brings error. Reversed.

*Alfred Lucking*, for appellant.

*Sullivan & Mason* (*Elliott G. Stevenson*, of counsel), for appellees.

MOORE, J. This is an action of ejectment for an undivided 1-28 of about 34 acres of land in Ecorse township, Wayne county. The plaintiff was the owner of the land, unless the ownership was cut off by adverse possession. He claims title as the grandson of Francis Chabert, who got title from the United States government in 1821. This land was part of a tract of about 237 acres called "Private Claim No. 42." It was marsh land, and part of a large marsh, of several hundred acres in extent, which fronted on Detroit river, and was covered with water most of the time until some dredging was done in 1891. The heirs of Chabert settled in different parts of the country between 1830 and 1840. Joseph Loranger obtained a two-ninths interest, and about 1850 built a fishing shanty on the front of claim No. 42. In February, 1854, Loranger deeded his two-ninths interest to Simon B. Rousson, who also bought another one-ninth interest the same year from Margaret Chabert. The fishing shanty was moved to Ecorse village about 1856 or 1857. A little later, Rousson rented the fishing privilege to some Canadians, who built a shanty and fished for a short time, when the shanty was torn down. In 1868, Rousson obtained a tax deed from the State for the taxes of 1865, in which the land was described as the middle part of claim No. 45, which deed was recorded April 2, 1868. It was claimed this referred to the same land, and proof was offered to that effect. Upon the death of Simon B. Rousson, which occurred in 1875, this land was inventoried as part of his estate, and

upon the petition of his eight children claim No. 42 was surveyed and divided into eight lots, numbered from 1 to 8. One lot was assigned to each child; Sarah Senecal, a married daughter, obtaining lot 1, which is the land in controversy in this suit. In 1883, she deeded to Franklin, who, in 1885, deeded to Goodrich, who deeded to the defendants in 1889. In 1886, Nathan Judson obtained title from some of the Chabert heirs, which, in 1889, by quitclaim deed, he conveyed to Goodrich, so that, at the time this suit was begun, the defendants were the owners of about three-fifths of the original title. In 1891, the defendants dredged a canal and made a dike around the land. This case was commenced in 1892. The claim of the defendants is that, after Simon B. Rousson got title, he and his successors in title exercised such acts of ownership and possession as to constitute adverse possession within the meaning of the law. A large number of witnesses were sworn. The jury returned a verdict for the defendants. The plaintiff brings the case here upon nearly 100 assignments of error, which will not be taken up separately, but will be grouped.

The first group alleges it as error that the court refused to direct a verdict in favor of the plaintiff. We think these assignments are not well taken, as there were questions that were proper to be submitted to the jury. *Ewing* v. *Burnet*, 11 Pet. 50.

It is claimed it was error to admit the tax deed of 1868, the assessment rolls, and the proceedings of the probate court in evidence. It is the contention of the defendants that, from the time Simon B. Rousson got title, he and his heirs claimed to be the owners of all the premises, and that he and they exercised all such acts of ownership by driving stakes to mark boundaries, by fishing, hunting, and trapping, by leasing to others, and by the erection of signs warning off trespassers, and by doing all such acts as the owner of the land would be expected to do, considering its character and the uses to which it could be put. We do not think any of this testimony was incom-

petent.  Some of it may not have been very valuable, but it was proper to advise the court and jury of all the acts of the grantors of the defendants, in order to characterize such possession as they did exercise over the premises in controversy.  *Oglesby* v. *Hollister*, 76 Cal. 136.

The other group of errors to be considered relates to the charge of the court, to which counsel for plaintiff objects —*First*, because it is argumentative; *second*, because it does not properly state the law of ouster; *third*, because it does not correctly state the law of adverse possession. The portions of the charge that are objectionable, so far as necessary to quote here, may be stated as follows: The learned judge was asked to charge the jury as follows:

"26. In order to constitute adverse possession, the acts of possession on the land claimed to constitute the adverse possession must be such as, if seen by the plaintiff, would clearly apprise him that the party doing the acts claimed the ownership of the property."

This he did, and very properly, as we think, for we believe it to be good law.  He then spoiled the effect of it by adding the following words, which we do not think were good law:

" That is the case, gentlemen.  By seeking the record, by titles, leasing, deriving a profit, driving any one off,—these acts must be such that, if Mr. Chabert was there in the vicinity, and knew about it, that that would be notice to him.  That is correct."

The addition of these words made the request to charge, that was direct, pointed, and clear, ambiguous and of doubtful meaning.  We have repeatedly held that the trial judge is not bound to charge the jury in the language used by counsel in his requests to charge, if he gives it in substance, so far as it is applicable to the facts in the case.  In this case, the request to charge bore upon one of the most important features of the case from the

standpoint of the plaintiff, and the plaintiff was entitled to have the jury properly instructed upon that point.

After disposing of the requests of counsel, the trial judge added, upon his own motion, the following:

"Now, gentlemen, I have but a few words more to say. Having stated to you already what adverse possession is, and what the rights of the parties are, it depends upon the things named,—what constitutes possession, and what constitutes adverse possession. One may occupy land by his tenant,—by himself, or by his tenant. But, in occupying it, it must be something. He must do something, and must intend to do something, and it must be a different occupancy from casually passing over it by a stranger; and you have heard the testimony in this case, and you will be able to determine whether this was a different style of occupation from that of the casual hunters who passed over it. You have seen these different witnesses brought here from the community where this property is located. You have been able to weigh their knowledge and measure their ability to know what is the real condition of the property,—what has been the condition of the property. It is for that purpose that you are here. You will be able to know whether there were taxes paid, maps made, stakes driven, shanties built, people driven off, leases made, any profits derived; whether it was continuous, or whether it was casual. You are to take the case, gentlemen, with your candor and your best sense. You are to consider it in all its bearings. You are to consider each side of this case as presented,—which side is most likely to be right; which are best informed; which, of all these persons who have come before you, convince you in your hearts that they are right. You are not likely to make a mistake about it. The doors have not been closed, and the main witnesses shut out. They have been opened, and you have seen. It is to you, I think, capable of a very reasonable conclusion. It is not mysterious. You will not be confused about it when you go out, any more than you would be in an assault and battery case,—any more than you would be in any case where you have seen the eyewitnesses. Now, this is not a case that you can split up and divide. It is not a case where, in dollars and cents, you may give one a portion, and divide it by twelve. It is a case for the plaintiff or the defendants. You are to say, gentle-

men, has the plaintiff made out a case? If so, 'We find for the plaintiff.' If the defendants have made out their case,—if they have maintained possession, control, ownership, leased, and shot game on this property, as contended by them,—if so, 'We find for the defendants.' Follow an officer."

It is urged that this was argumentative and misleading, and, taken in connection with the rest of the charge, indicated to the jury that the trial judge thought the case should be decided for the defendants. We are inclined to think it open to at least one of these criticisms. The case at issue is a close case from a legal standpoint. We have already indicated that we thought it such a case as, from the proofs, made it necessary to submit the questions involved to the jury. From the nature and character of the proofs, it was important that the trial judge should clearly and without ambiguity instruct the jury as to the law applicable to the case. This, we think, was not done.

The judgment is reversed, and a new trial ordered.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.