## LA FOUNTAIN *v.* DEE.

1. ADVERSE POSSESSION — TENANCY IN COMMON — OUSTER — EVIDENCE.

A finding of an ouster of a tenant in common by his cotenant, essential to make the sole possession of the latter adverse, may rest upon evidence tending to show that for 30 years or more the land has been known by his name, that such acts of ownership as the character of the land was susceptible of were exercised by him, that he procured a tax deed, which he caused to be placed of record, and that upon his death the property was divided and the lots distributed among his heirs, and that neither the former tenant nor any of his successors made any claim to the premises during such time.

2. SAME — QUESTION FOR JURY.

It is error, however, to direct a verdict upon such evidence, in the face of the testimony of a witness who had several times been upon the premises adjoining those in dispute, and who was in position to know if there had been any acts of adverse possession, that he had not seen any sign of occupancy up to three years before the trial, nor any attempt to exercise ownership of the land at all.

Error to Wayne; Carpenter, J. Submitted April 21, 1896. Decided July 28, 1896.

Ejectment by Sarah E. La Fountain against Michael J. Dee and others. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Re versed.

*Chamberlain & Guise* (*Edwin F. Conely*, of counsel), for appellant.

*Sullivan & Mason* (*E. G. Stevenson*, of counsel), for appellees.

MONTGOMERY, J. This is an action of ejectment for an undivided one-fourteenth part of a tract of land in the township of Ecorse, Wayne county, comprising a part of private claim No. 42. The case is very similar in its facts to *Chabert* v. *Russell*, 109 Mich. 571, which was ejectment for another portion of this same tract. This case differs from that in the proof offered to show adverse possession, and to rebut such proof; and the claim is also made that, as the defendants and their grantors were tenants in common with the plaintiff, no ouster is shown which would set the statute of limitations to running. The circuit judge directed a verdict for defendants on the whole case, holding that, as matter of law, the defendants had shown adverse possession. At least, this is to be inferred, although the ground of the holding is not stated in the record. While we think the character of the occupancy, as shown by the statement of facts in *Chabert* v. *Russell*, was such that the jury might have found that it constituted adverse possession, yet we cannot say that the evidence upon this subject is conclusive, or that it was such as justified a directed verdict, particularly in view of testimony (offered by the plaintiff) of one witness to the effect that there was no sign of occupancy of the land up to three years ago; that it was all water and marsh; that there was no fishery on the marsh ten years ago; that she made several visits to her brother, who had lands adjoining the premises in dispute; and that she never saw any attempt to exercise

ownership of the land at all, and could have seen it if there had been any possession of it, but did not see any. This testimony, of itself, was sufficient to raise a question for the jury, particularly in view of the nature of the testimony offered to support the claim of adverse possession.

Plaintiff claims that, inasmuch as the defendants were cotenants, there was no proof of an ouster. There was, it is true, no direct testimony that the plaintiff was notified that the defendants claimed title to the entire property. But there was testimony tending to show that defendants' grantor, Rousson, had occupied the land in question, and that it was known as "Rousson's Marsh," for 30 years or more before the commencement of suit, and that such acts of ownership as the character of the land was susceptible of were exercised by him; that in 1868 he procured a tax deed of the lands, which he caused to be placed of record; that upon the death of Rousson this private claim 42 was divided into eight equal parts, and the lots were distributed among the heirs. And there was testimony tending to show that the possession was continued, and that, during all this period of occupancy, plaintiff's grantors (the defendants' cotenants) had made no claim to the premises. Counsel rely upon the opinion of Mr. Justice CHRISTIANCY in *Dubois* v. *Campau*, 28 Mich. 313. In the same case there was also an opinion of Mr. Justice CAMPBELL, in which Mr. Justice GRAVES concurred. We think, under the opinion of Mr. Justice CHRISTIANCY, there was enough in this case to justify the submission of the question of an ouster to the jury. In speaking of the delay in asserting a claim of ownership, Mr. Justice CHRISTIANCY said:

"We are now to consider how this neglect of the plaintiffs and their ancestors, for so long a period, to demand their share of the possession or rents and profits, affects the case, in view of the circumstances in proof. And, as the cases are not entirely harmonious (though generally involving substantially the same principles), it is proper to look to the principles involved. As a general rule, it

is safe to presume that men will act in accordance with their own obvious interests, and will not surrender their rights or the enjoyment of their property to another having no just claim, without compensation in some form. This is a principle of human conduct which experience has shown to be generally reliable. It is equally recognized by courts in the administration of justice, and by the world at large in the ordinary affairs of life. Upon this principle, the continued neglect or forbearance of the plaintiffs and their ancestors to demand or assert their rights in any form, and their acquiescence in the enjoyment of the property and its income for so long a period, furnishes grounds for the inference, and is therefore evidence tending to show, that the plaintiffs and their ancestors were conscious and must have been satisfied that Joseph Campau was entitled, of right, to the sole use of the property and its income as against them, and also, in this manner, to show that whatever interest they might once have had had been released or conveyed, or for some good reason given up to him, though without a release or conveyance of record, and that they therefore knew that he was holding the property rightfully as his own, and under a claim of title to the whole, which was recognized and acquiesced in by them. This would, of course, make the possession adverse, and constitute an ouster, and would also tend, in some degree, to show that such had been the position of the parties from the commencement of Joseph Campau's sole possession, as this would best account for and explain the conduct of all the parties. In this view, the neglect, forbearance, and acquiescence for so long a period merely create a natural presumption or furnish an inference of fact,—in other words, presumptive or circumstantial evidence tending to prove a conveyance or ouster, which, like other circumstantial evidence, is to have weight according to its greater or less tendency to produce in the minds of the jury actual belief that such was the fact. And it would be quite immaterial whether the jury should believe that this neglect or acquiescence had been for the reason that a deed or release had been given, or some agreement or understanding had, by which Joseph Campau's right to the whole was recognized, or whether, without such deed, release, or agreement, they should believe that the plaintiffs and their ancestors knew that his possession was under an adverse claim

of right to the whole, or that, without gross negligence and inattention to their own interests, they must have known it, as in either view the possession must be regarded as adverse, and known to be so. In this view, it seems to me obvious that the strength of the presumption, the force of the inference from such evidence, must depend much upon the situation of the parties, the nature of the property, and the surrounding circumstances, in each particular case."

See, also, *Cook* v. *Clinton*, 64 Mich. 309 (8 Am. St. Rep. 816); Freem. Co-Ten. §§ 230, 232.

We think the question was one for the jury.

The judgment will be reversed, and a new trial ordered.

GRANT, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.