## DONOHUE *v.* VOSPER ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 445. Argued January 26, 1917.—Decided March 6, 1917.

When it appears by the state court's opinion that both parties relied upon the construction and effect to be given a decree of a federal court, and that the court applied it against one of them, rejecting the construction relied on by the other, a federal question is presented which this court may determine on writ of error.

In a suit by the United States to determine the title to certain land, rival claims, arising independently under the public land laws and based on facts existing before the litigation, were asserted by two individuals on the one part and by two corporations on another. One of the individuals had deeded to the other with warranty before the suit, and the second corporation had succeeded to the first during its progress. By consent of the United States and the individuals a decree was entered declaring that the title at the commencement of the suit was fully and completely vested in the first corporation and, pending the suit, had become fully and completely vested in the second, that neither the United States nor the individuals had any right, title or interest in the land, that the title should be quieted in the second corporation against the United States and the individuals, and that the decree should operate as a release from the United States and each of the individuals of all right and title to the land and might be recorded as such in the county records.

*Held*, (1) That the decree should be construed, not as divesting any interest of the individuals or affecting their relations *inter sese*, but as adjudging that both were devoid of interest from before the beginning of the suit, and, consequently,

(2) That the covenant of warranty between them attached by estoppel to the title when afterwards acquired by the warrantor.

The warrantor, having acquired the title, conveyed to the plaintiff in error, the warrantee deeded part of his interest to another, and thereafter the plaintiff in error joined with the warrantee and the latter's grantee in an option and lease of the property, reciting the warrantee's interest. *Held*, that this was a practical construction of the decree to the effect that it had not disturbed the warranty.

A decision by a state court against a claim of title by adverse possession,

where the question is essentially local and dependent on an appreciation of evidence as to the conduct of parties, is not reviewable by this court.

189 Michigan, 78, affirmed.

THE case is stated in the opinion.

*Mr. A. H. Ryall* for plaintiff in error.

*Mr. Dan H. Ball* for defendants in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

. Suit to declare certain deeds to lands in Michigan to be void, and that plaintiff in error (as he was plaintiff in the court below we-shall so refer to him) be declared to be the owner of the lands and of the minerals therein, that defendants have no title thereto, for an accounting of certain royalties collected by certain of the defendants from the Buffalo Iron Mining Company and that the latter be restrained from paying any further royalties. The lands are described as follows: W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ and N. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, section 23, T. 43 N., R. 35 W., County of Iron, Michigan.

An answer, which was also claimed to be a cross bill, was filed, and upon the issues thus formed, and after hearing, the court by a decree dismissed the bill, adjudged title to the land to be in the defendants Vosper, Abbott and Tonkin in certain proportions and all the ores and minerals therein, that title to the lands in the proportions mentioned be quieted against plaintiff and all persons claiming under him, that he execute a deed to Vosper, Abbott and Tonkin of the interests decreed and in default thereof the decree to operate as such release and conveyance.

The decree was affirmed by the Supreme Court of the State.

The facts of the case were found by the Supreme Court substantially as follows:

The land was conveyed to the State of Michigan to aid in the construction of two railroads, one to Marquette and the other to Ontonagon. The land applicable to the Marquette road was released by the State to the United States and later, in 1866, under an act of Congress granting lands to the State for canal purposes, this land inured to the benefit of the Lake Superior Ship Canal, Railway & Iron Company by a grant from the State.

The land to be used for the benefit of the Ontonagon road was not released and it was subsequently decided that the title to an undivided one-half of the "common lands"—that is, lands at the intersection of the proposed railroads—still remained in the State for the purposes of that road, except as affected by an act of Congress of 1889 by which Congress declared a forfeiture of grants in the State of Michigan for all unconstructed railroads and confirmed title in all persons who had made cash entries within the limits of the grants and all persons claiming state selections, such as the Canal Company. By an exception in the act the title was not confirmed to those lands on which there were *bona fide* preëmption or homestead claims asserted by actual occupation on May 1, 1888.

Michael Donohue, plaintiff's grantor, together with various other persons, had entered upon these "common lands" as preëmptors and homesteaders, and asserted rights thereto under the Act of 1889 referred to above.

Prior to the Act of 1889 the Canal Company brought ejectment suits against those settlers. In 1894, in the ejectment suits, it was decided that the title of the Canal Company to the lands selected by the State was confirmed by the Act of 1889, subject to the exceptions provided in the act, and that it should be determined in an equity suit in the United States court what lands came

within the excepting clause. It was also decided that the title of the State to the lands granted for the Ontonagon road, including an undivided one-half of the "common lands," was forfeited to the United States.

Defendant Vosper had rendered service in this litigation to Donohue and the other claimants and took from Donohue a warranty deed on December 29, 1894, to an undivided one-quarter interest in the land.

At the instigation of persons claiming under the Act of 1889, the United States filed a bill against the Canal Company. In that suit the Canal Company filed a cross bill against the claimants under the homestead and preëmption laws, including Donohue. Vosper was also made a party. The issue in the litigation, therefore, was whether Donohue and the other claimants were *bona fide* homesteaders or preëmptors on May 1, 1888.

Pending the suit the Canal Company conveyed to the Keweenaw Association, Limited.

A decree was entered, Donohue and the other claimants and Vosper consenting; quieting the title to the lands in the Keweenaw Association, Limited, as successor of the Canal Company. The decree was entered in 1896 and adjudged that the Canal Company at the commencement of the suit was fully and completely vested with the title to the lands and since the commencement of the suit it became fully and completely vested in said Keweenaw Association, Limited, as successor of the Canal Company, and that neither the United States of America nor any of the defendants consenting to the decree had "any right, title, or interest therein." And it was adjudged that title to the lands be quieted against the United States and the consenting defendants and further that the decree should operate as a release and conveyance from the United States and each and every of the other of said defendants of all right and title to said lands and might be recorded as such in the records of the proper county.

November 19, 1896, the Keweenaw Association, Limited, conveyed the lands by quit-claim deed to Donohue.

It is the contention of Vosper that he and Donohue agreed to this arrangement, by which a sum of money was to be paid for the timber cut and the lands were to be conveyed by the Keweenaw Association to Donohue.

December 3, 1896, Michael Donohue delivered to plaintiff a quit-claim deed to the premises and on April 3, 1908, Vosper quit-claimed an undivided one-eighth interest to defendant Abbott, and on December 18th following plaintiff joined with Vosper and Abbott in the execution and delivery of an option for a mining lease of the premises.

February 3, 1909, Abbott quit-claimed an undivided one-thirty-second interest in the minerals to Tonkin, and on March 7, 1910, plaintiff joined Vosper, Abbott and Tonkin in the execution and delivery of a mining lease in pursuance of the option given before.

The mining lease, which was for a term of 30 years, was issued to the Niagara Iron Mining Company as lessee and was by that company assigned to the Buffalo Mining Company. The Niagara Company was and the Buffalo Company has been and is now in possession of the premises for mining purposes.

The trial and supreme courts found that Donohue executed the deed to Vosper. About this there is no controversy. Here the contentions of the parties turn upon the effect of the decree which was rendered by consent in the suit of the United States against the Canal Company, and this makes, it is contended, a federal question.

Defendants, however, assert that the decree does not present a federal question and that, besides, it was not claimed or urged as such by plaintiff in the state courts but appears for the first time in the petition for writ of error, and defendants refer to the bill of complaint to sustain their assertion.

But the Supreme Court in its opinion declared that a contention of plaintiff invoked "the effect of the decree of the federal court." And, discussing the decree, the court decided that its effect was "to oust Vosper from the land, of which he had the actual or constructive possession of an undivided quarter interest,—it appearing that Michael Donohue continued in possession of the undivided one-half of the claim from the time of his original entry until his quit claim deed to the complainant [plaintiff], despite the alleged trespasses of the canal company and its successor, which possession would inure to Vosper under the warranty deed." And the court further said that by the paramount title thus established in a third party by the decree Vosper was evicted from his title and possession and a "clear case for the application of the doctrine of estoppel by warranty" is made in his favor.

The decree, therefore, was made an element in the decision against plaintiff, and it was claimed by him to be an element in his favor. The motion to dismiss is, therefore, denied.

The contention was in the state courts and is here that the decree operated as a conveyance from Michael Donohue and Vosper to the Keweenaw Association and that by virtue of its effect as a conveyance it released the interest that Vosper had in the lands through the warranty deed from Donohue to him and that no interest remained in Vosper upon which an estoppel could rest. In other words, that by the decree Vosper's interest passed to the Keweenaw Association and from the latter to Michael Donohue; and a number of cases are cited to show that Vosper could make a conveyance of his interest and that his grantee, in this case the Keweenaw Association, and plaintiff through the latter, would take his interest.

The contention puts out of view a great deal that is material in the situation. The suit in which the decree was entered was one to determine whether the Canal

Company or its grantee, the Keweenaw Association, had derived title from the United States or whether Donohue had. Vosper was made a party because of the deed from Donohue to him and the decree quieted title in the Keweenaw Association. If it had gone no further there would probably be no dispute about its effect, but it declared that it should "stand and operate as a release and conveyance from the United States, and each and every of the other of said defendants, of all right and title to said lands" and might "be recorded as such in the records of the proper county." Standing alone these latter words might have the effect for which plaintiff contended, but they must be construed by what precedes them and by the nature of the suit. This demonstrates that the decree was but the clearing away of obstructions to the rights of the Keweenaw Association and was not intended to convey to it any interests the defendants had but left unaffected whatever obligations existed between themselves. This is found by the Supreme Court of the State and that Michael Donohue was paid a sum of money by the Keweenaw Association for the timber cut upon the land and the land was to be conveyed by the Keweenaw Association to Michael Donohue, leaving, as we have said, the rights between him and Vosper unaffected, and this is demonstrated by their subsequent relations.

On April 3, 1908, Vosper quit-claimed an undivided one-eighth interest in the land to Abbott and in the following December plaintiff and Vosper and Abbott executed and delivered an option for a mining lease of the premises and subsequently a lease in fulfillment of the option to the Niagara Iron Mining Company for the term of 30 years. The option and the lease recited that Vosper was the owner of an undivided one-eighth interest in the land.

It is further contended that plaintiff had acquired title to the land by adverse possession, but the state courts

decided against the contention. This was essentially a local question, involving an appreciation of the evidence as to the conduct of the parties, and we cannot review it.

*Decree affirmed.*