## HARJO et al. v. EMPIRE GAS & FUEL CO.

Circuit Court of Appeals, Eighth Circuit.
September 21, 1928.

No. 7954.

Before KENYON, Circuit Judge, and SCOTT and SYMES, District Judges.

KENYON, Circuit Judge. Appellee has an oil and gas lease, and is in possession thereunder of a certain forty acres of land in Seminole county, Okl., which is claimed by Jimpka, Milsey, and Molly Anna Harjo, Indians, as heirs of one Sanko, a full-blood Seminole Indian, who died in 1907, the land being a part of the allotment of said Sanko. In 1926 these Indian heirs executed attorneys' contracts with appellants Saunders and Emerick, attorneys at law, under which said attorneys were to receive one-half of what might be recovered in an action brought to secure said land for said heirs. This contract was recorded, and thereupon appellee (plaintiff below) filed a bill in the United States District Court for the Eastern District of Oklahoma to quiet title as against appellants, who in turn filed a cross-bill to quiet title in them and to cancel appellee's oil and gas lease. Upon hearing, the trial court dismissed appellee's bill without prejudice, and dismissed appellants' bill with prejudice. The appeal here is from the court's action in dismissing the cross-petition; no appeal being taken from the dismissal of appellee's bill.

Before the death of Sanko, one J. O. Davis had secured from said allottee a deed of his allotment, and in 1909 he conveyed the same to one Wilson, who subsequently executed an oil and gas lease to the land in question to one Born, who assigned it to one Taylor, and he to appellee.

April 3, 1911, Jimpka, Milsey, and Molly Harjo, having inherited the Sanko allotment, executed a deed therefor to C. W. Oliver. This deed was duly approved on April 4, 1911, by the county court of Seminole county, Okl., which had jurisdiction of the estate of Sanko, according to the requirement of the federal statute of May 27, 1908 (35 Stat. L. c. 199, § 9). April 4, 1911, Oliver conveyed all of this land, except 30 acres, to J. O. Davis. No deed subsequent to this was made by Davis to Wilson. This seems to have been the reason for the dismissal of appellee's bill by the trial court. Appellee failed to bridge the hiatus in the title between Davis and Wilson to the satisfaction of the trial court.

May 14, 1912, the Indian appellants, through attorneys connected with and representing the government of the United States, brought suit in the district court of Seminole county, Okl., against Oliver, Davis, Wilson, and others, attacking various in-

Paul Pinson, of Muskogee, Okl., and Iris C. Saunders, of Shawnee, Okl. (James L. Emerick, of Shawnee, Okl., W. W. Pryor and W. N. Stokes, both of Wewoka, Okl., and D. H. Linebaugh, of Muskogee, Okl., on the brief), for appellants.

Hayes McCoy, of Bartlesville, Okl. (J. W. Finley, of Chanute, Kan., and Warren T. Spies, of Bartlesville, Okl., on the brief), for appellee.

struments affecting the Sanko allotment, and in said suit sought to set aside the deed to Oliver of April 3, 1911, not on the theory that it was executed in violation of federal restrictions as to alienation of Indian lands, but on account of alleged fraud on the part of Oliver, in procuring the same. On December 9, 1913, a decree was entered and a stipulation filed in the suit, which stipulation provided that, if Davis paid to the attorneys for the Indian appellants for their use and benefit $500 before January 12, 1914, plaintiffs would dismiss the action as to certain lands, among which were the lands in controversy here, and that, if not so paid, judgment should be entered against Davis for the possession of said real estate, quieting plaintiffs' title thereto and canceling all deeds through which Davis might claim title. The $500 was paid according to the stipulation, and other proceedings were had in said case, to which reference will hereinafter be made.

The only question at issue on this appeal is: Had the title to the land in question been divested from the Indians? If it had, the action of the court in dismissing the cross-petition was correct.

Appellee concedes that the deed secured by Davis in 1909 of the Sanko allotment was void as violative of federal restrictions, and no reliance is placed thereon, but it is insisted that the title of the Indians has been divested by the deed to Oliver in 1911, and reliance is also placed upon the effect of the proceedings of the suit in Seminole county, and a claimed resultant estoppel.

It is the contention of appellants that the district court of Seminole county decreed the deed of April 3, 1911, to Oliver to be void, and that thereby this muniment of title was absolutely destroyed, and therefore the title to the lands became vested again in the full-blood Indian heirs of Sanko, viz. Jimpka, Milsey, and Molly Anna Harjo, and could not be divested except by a new deed approved by the county court of Seminole county.

This leads us to an examination of the proceedings and decree in the Seminole county suit. Other lands than those in issue here were included in the deed from the Indians to Oliver, and were involved in that suit. The decree of the Seminole county court passed on a number of deeds, and recites, "and each of said deeds and mortgage are void." This included the Oliver deed in connection with the others. The following also appears in the decree:

"And upon agreement and stipulation of the parties in open court.

"It is Ordered that this cause be now continued until the 12th day of January, A. D., 1914, upon the issues joined upon the claim of the plaintiffs for rents, profits, and damages in and to all of the real estate described in their petition, and upon the claim of the plaintiffs for the possession of the East Three Quarters of the Northeast Quarter of the Southwest Quarter of Section 28, Township 9 North, Range 6 East; and the Northwest Quarter of the Northeast Quarter of Section 34, Township 9 North, Range 6 East; and the South Half of the South Half of the Southeast Quarter of the Southwest Quarter of Section 27, Township 9 North, Range 6 East, and to quiet their title thereto and to cancel the deeds and mortgage set out in their petition affecting the title to the same.

"Tom D. McKeown, Judge."

The land in suit was part of the land described in this stipulation.

On January 13, 1914, the court made the following entry:

"Mollie Anna Harjo, Plaintiff, v. J. O. Davis, Defendant. 2003.

"In the District Court of Seminole County, Oklahoma.

"The motion of the plaintiff for judgment on the stipulation is by the court continued until March 2nd, 1914. It is ordered by the court that the defendant have until March 2nd, 1914, as set forth in the stipulation of settlement.

"Tom D. McKeown, Judge."

April 5, 1916, in the same case the following was filed:

"Now come the plaintiffs by their attorneys, J. H. Miley and J. A. Patterson, and acknowledge receipt of the $500 agreed to be paid by J. O. Davis, as one of the defendants in the above entitled action, in full satisfaction of the stipulation as filed herein on December 9th, 1913.

"J. H. Miley and
"J. A. Patterson,
"Attorneys for Plaintiffs."

March 5, 1914, a certain entry was made in the minute book of the clerk of the district court of Seminole county, Okl., as follows:

"Judgment as per Journal Entry, D. B. Smith enters Disclaimer. E. S. Wilson enters his appearance by J. O. Davis and disclaims as per Disclaimer to be filed. Cause is continued as to other Defendants."

Appellants rely on the statement in the decree of the district court of Seminole county that certain deeds, including the Oliver deed, were void. This entire decree however, in the light of all the proceedings,

must be examined and considered to ascertain what the court was deciding and what the judgment in fact was, and this cannot be ascertained from a statement here and there in the decree without regard to the relativity of said statement to other parts thereof.

The rule is laid down in 34 C. J. 501, § 794:

"A. Construction. 1. In General. * . * * Judgments must be construed as a whole, and so as to give effect to every word and part. The entire judgment roll may be looked to for the purpose of interpretation. Necessary legal implications are included although not expressed in terms, but the adjudication does not extend beyond what the language used fairly warrants. The legal effect, rather than the mere language used, governs. In cases of ambiguity or doubt, the entire record may be examined and considered. Judgments are to have a reasonable intendment. Where a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective and conclusive, and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered. * * * The technical terms of a judgment cannot be limited or controlled by the opinion of the court, but it is generally held that the opinion may be considered on the question of the construction and effect of the judgment. * * * A construction adopted or acquiesced in by the parties will not be changed without strong reason."

We quote from 34 C. J. 930, § 1336:

"(f) * * * But the general rule is that a matter not decided, and not necessarily determined by the judgment, is not concluded, although put in issue by the pleadings, especially where the matter pleaded was not actually litigated—that is, supported or attacked by evidence, made the subject of the trial, submitted to the jury, or pressed upon the consideration of the court. And for stronger reasons is this true where the judgment expressly reserves the question, or declares that it was not in issue."

Also section 1343:

"* * * If in the former action the question of title, although in issue, was not actually litigated and determined, the judgment is not conclusive."

In Vicksburg v. Henson, 231 U. S. 259, 34 S. Ct. 95, 58 L. Ed. 209, it is said by the court (page 269 of 231 U. S. [34 S. Ct. 99]): "It is well settled, however, that a decree is to be construed with reference to the issues it was meant to decide." Hale v. Independent Powder Co., 46 Okl. 135, 148 P 715; Donohue v. Vosper, 243 U. S. 59, 65, 37 S. Ct. 350, 61 L. Ed. 592; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; United Shoe Mach. Corporation v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; Northwestern Port Huron Co. v. Babcock (C. C. A.) 223 F. 479.

No evidence was introduced in the case in Seminole county. Oliver and Davis disclaimed an interest in certain of the land covered by the deed of April 3, 1911. Mr. Miley, one of counsel for the government, testified that the judgment was based on the disclaimers made in open court. As to the particular land in question here, the case was continued, evidently pending a settlement by the payment of $500, which settlement was carried out, and the Indians through their attorneys received the money. There was no investigation of the question as to whether the Oliver deed was void as to this particular land, and no decision thereon. In fact this question was expressly excepted by the decree, which shows that it was not intended to hold the deed void as to the land in question in this action. If the court was so holding, there was no need of continuing the case for further proceedings with reference thereto. While fraud was pleaded as to these lands, it is apparent that the decree was entered pursuant to some agreement made with the approval of the government's attorneys representing the Indians. The stipulation filed in the suit provides that, if the said J. O. Davis fails to pay the sum of $500 within the time specified, the court shall render judgment for the possession of this land and shall quiet plaintiff's title thereto, and that the deeds through which Davis claimed title against plaintiffs shall be canceled. Of course, if the deeds had already been canceled, there was no need of any such provision.

It seems clear that the court was holding the Oliver deed void only as to the land concerning which disclaimer had been made, and did not pass upon the validity of the deed as to the lands now in dispute, nor attempt any cancellation of the transfer as to them. We see no reason why a deed could not be good as to part of the land included therein and void as to part. Kelley v. New State Land Co., 115 Okl. 170, 245 P. 988. The decree of the state court cannot in our judgment be given the construction contended for by appellants.

Appellants urge that, if the action of the

Seminole county district court was not a final adjudication on the questions raised in the cross-petition, then those questions are still open. We think this the real basis of appellants' contention. Counsel for appellants in their brief say:

"Eliminating all presumptions (as in Russell v. Place) because of the insufficiency of the minutes, we must conclude that the allegations of the petition in the Seminole County District Court have never been adjudicated. If this be true then the matter was open at the trial. We submit that all the evidence discloses that these Indians were misled and imposed upon to such an extent as to amount to forgery in the second degree. The decree of this court therefore should have been for a cancellation of that document under the proof of fraud, in the present case."

The claimed fraud was that in taking the deed Oliver falsely represented that Davis had an outstanding title; that the deed was for only 30 acres; that the transaction was a scheme for the purpose of circumventing the restrictive acts of the federal government relating to alienation of Indian allotments. The real ground of fraud relied on, however, is the second one, that the deed was represented to be for only 30 acres, and that the Indian grantors, being ignorant and illiterate, were overreached.

We are not impressed with the claim that the Indian appellants did not know what they were signing, and that they intended to sign a deed for only 30 acres and not for the land in question. It is true that they had to act through interpreters and were ignorant. In the petition of plaintiff in the case in the district court of Seminole county, it is stated, referring to the Oliver deed; "That, as plaintiffs then and there were about to sign said instrument of writing, plaintiffs were informed by the interpreter that said instrument writing included the description in the conveying clause thereof not only of the said thirty acres of land, but, in addition thereto, of the entire allotment of the said Sanko, deceased, consisting of all the lands hereinabove described; that, upon receiving this last mentioned information, plaintiffs then and there at first refused to sign and execute said instrument." The Indian appellants testified that they did not understand what they were signing, and Oliver's testimony was an attempt to substantiate them in this claim, which testimony, however, was thoroughly discredited by the fact that, while he claimed the transaction leading up to the

deed of April 3, 1911, only involved 30 acres, the next day after he took the deed he quitclaimed to Davis all except 30 acres of the land described in said deed. The court interested in this apparent anomaly propounded to him this question:

"If you honestly thought that only covered thirty acres, and these Indians were deeding you this thirty acres, then why would it be necessary for you to convey him any other land, if you honestly believed the Indians didn't convey you but thirty acres. I want that explained."

■■ It was not satisfactorily explained, and it is evident that the court did not believe the statement of Oliver. The court sitting as a chancellor had the opportunity to hear and observe the witnesses—an advantage in weighing the credibility of witnesses not possessed by us. The determination of the question of fraud was dependent on a question of fact as to the alleged false representations. While there is no specific and formal finding on this question, it must of necessity inhere in the general decree of the court, and the court stated to the attorneys for appellants in open court as follows: "I will deny your cross-petition. I will deny it and deny yours, because I find against you on the question of fraud." The learned trial court has had broad experience in dealing with questions involving the rights of Indians. He was well qualified to judge of the credibility of these witnesses as he saw them face to face. The printed page does not always tell the same story as the spoken word. His finding against fraud should be accepted as presumptively correct, and this court has in many cases declared "that where a master or chancellor has considered conflicting evidence, and made a finding thereon, the finding will be taken as presumptively correct, and will be permitted to stand, unless an obvious error has intervened in the application of the law, or some serious and important mistake appears to have been made in the consideration of the evidence." Snider et al. v. Dobson et al. (C. C. A.) 74 F. 757; Mann et al. v. Keene Guaranty Sav. Bank (C. C. A.) 86 F. 51; North American Exploration Co. v. Adams (C. C. A.) 104 F. 404; Board of Com'rs v. Irvine (C. C. A.) 126 F. 689; Hussey v. Richardson-Roberts Dry Goods Co. (C. C. A.) 148 F. 598; United Shoe Mach. Corporation et al. v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708. The burden on cross-petitioners to show fraud in securing the Oliver deed was not successfully carried.

The equities of this case as to the cross-petition are not with appellants. The Oliver deed was not a void deed, as it was properly approved by the county court of Seminole county. If it was secured by fraud, it was voidable at the option of the defrauded party. Title would pass subject to the grantor's right to defeat it. 18 C. J. § 175. The deed being approved, as provided by law, the Indians as to the question of setting the same aside on the ground of fraud were in no different position than a white person would be, and the right to attack the deed for fraud could be lost by laches or the statute of limitations. Schrimpscher v. Stockton, 183 U. S. 290, 22 S. Ct. 107, 46 L. Ed. 203; Felix v. Patrick, 145 U. S. 317, 12 S. Ct. 862, 36 L. Ed. 719. This is not a situation where a transfer of Indian lands is void because of violation of government restrictions. Hence it does not present an attempt to circumvent the federal statutes by divesting title by a stipulation in court. We see no reason why the claim of the Indians in the district court of Seminole county that the deed had been secured by fraud could not be settled and waived by the attorneys for the government authoritatively representing said Indians in the litigation. There is no claim that these attorneys practiced any fraud on the Indians or acted in any way except for their benefit. A fair settlement of a suit brought by authorized government attorneys at the request of the Indians to recover for them lands claimed to have been secured by fraud certainly is not a trick or device to circumvent the restrictive statutes of the United States as to alienation of Indian lands. If the United States had authority to bring the action, it had authority to bind the Indians. Heckman v. United States, 224 U. S. 415, 32 S. Ct. 424, 56 L. Ed. 820; United States v. Dunn et al. (C. C. A.) 288 F. 158. The United States was not a party to the suit in the district court of Seminole county, but the United States employed the special attorneys for the Indians and paid them. One of them, Mr. J. H. Miley, a former Justice of the Supreme Court of Oklahoma, testified: "I advised Seminole allottees with reference to their rights growing out of allotted lands. I was supposed to devote my attention particularly to those designated as unrestricted Indians, that is, the unrestricted lands, and was to prosecute such suits as any unrestricted Indian might desire to bring with reference to recovery of any property of which he had been defrauded;" and, as to this particular land in controversy, testified: "Considering the nature of the controversy, the value of the land involved as I had the figures before me at the time, I considered the settlement a fair one for the Indians." In United States v. Candelaria et al., 271 U. S. 432, 444, 46 S. Ct. 561, 564 (70 L. Ed. 1023), the Supreme Court said: "But, as it appears that for many years the United States has employed and paid a special attorney to represent the Pueblo Indians and look after their interests, our answer is made with the qualification that, if the decree was rendered in a suit begun and prosecuted by the special attorney so employed and paid, we think the United States is as effectually concluded as if it were a party to the suit." See, also, United States v. Dunn et al. (C. C. A.) 288 F. 158.

We have heretofore set out the entry in the minute book of the clerk of the district court of Seminole county with relation to judgment as per journal entry. This was on May 5, 1914. While under the Oklahoma statutes (Comp. Stat. Oklahoma, Anno. 1921, vol. 1, § 685) this would not constitute a legal judgment, equity regards that as done which should be done, and, taking into consideration the stipulation, the continuance of the case, the payment of the $500 to the attorneys for the Indians, it is clear what judgment the court intended should be entered, and that the parties and the government have all proceeded and dealt with each other as if a formal judgment of dismissal of the suit as to the lands in controversy here had been entered. (It is asserted in the brief of appellee that since the trial of the case below a nunc pro tunc order has been entered amplifying the clerk's minutes.) Davis paid the $500. The Indians through their attorneys received the same. That the government regarded the matter as closed is shown by the letter of Mr. Miley, one of the government counsel for the Indians, who wrote the United States attorney at Muskogee on October 22, 1924, concerning certain suits then pending in the United States court as follows:

"Suit 443–39 involving the allotment of Sanko, #1033, according to my data Sanko died June 26, 1907. This office brought suit for his heirs against J. O. Davis and others in the District Court and on December 9, 1913, a judgment was rendered for the plaintiffs for a portion of the land involved and Davis made a cash settlement as to the balance. The illegal deeds have been all canceled and I recommend that this suit be

602

dismissed. This will apply also to suit 445–123.''

The district attorney at Muskogee thereupon entered a motion to dismiss the two suits that had been brought by the United States against J. O. Davis involving the Sanko allotment, assigning as his reason: "It now appears that since the filing of the bill of complaint the allottee's land involved in said suit has been disposed of under the supervision of the attorney for the Seminole Nation.''

■ The proceedings in the district court of Seminole county have not been questioned by the Indians up to the time of making the contract with attorneys to recover the land for them, and, even though no formal judgment was entered in those proceedings at the time, they were, taken as a whole, sufficient to estop appellants from the equitable relief sought in their cross-bill. It is said in 34 C. J. 767: "So a decision without judgment may operate as a bar where the parties have acquiesced therein and dealt with each other as if judgment had been formally entered.'' That is the situation here. In view of all the circumstances of this case, it would be inequitable to disturb and set aside the disposition made of the same by the trial court.

Its judgment is affirmed.