KRUEGER v. HACKLEY UNION NATIONAL BANK & TRUST COMPANY.

1. TENANCY IN COMMON—POSSESSION OF COTENANT—PRESUMPTIONS.
   It is presumed that a cotenant who enters into possession recognizes the rights of his cotenant until the contrary clearly appears.

2. SAME—POSSESSION—PRESUMPTIONS.
   The actual possession of a tenant in common will not be presumed adverse to that of his cotenants and his constructive possession in like manner will be limited to his interest as tenant in common.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Cotenancy and Joint Ownership §§ 32, 33.
[2–6] 20 Am Jur 2d, Cotenancy and Joint Ownership §§ 41–43.
  3 Am Jur 2d, Adverse Possession §§ 173–178,

3. SAME—ADVERSE POSSESSION BY COTENANT—NOTICE.

Possession of a cotenant, being rightful, does not import adverse possession, as would that of a stranger, hence, presumption of occupation as a cotenant must be overcome by acts and declarations which are clearly inconsistent therewith, and which are brought home to the cotenant.

4. SAME—ADVERSE POSSESSION—EVIDENCE.

One tenant in common may acquire title against his cotenants by adverse possession, but the proofs thereof must be clear and cogent and may not be made out by inference.

5. ADVERSE POSSESSION—TENANCY IN COMMON.

Adverse possession by one of several cotenants holding property as tenants in common must establish intent to hold adversely, adverse possession in fact, and knowledge or notice to the other cotenants.

6. SAME—TENANCY IN COMMON—EVIDENCE—INTERMITTENT POSSESSION—NOTICE.

Evidence of alleged adverse possession of plaintiff cotenant of property held by him and defendant as tenants in common *held,* insufficient to establish by clear and cogent evidence either notice to the cotenants or evidence of any ouster, where plaintiff's possession was only intermittent and no notice appears to have been given to cotenant defendants.

Appeal from Muskegon; Beers (Henry L.), J. Submitted Division 3 June 7, 1966, at Grand Rapids. (Docket No. 1,272.)    Decided December 8, 1966.

Complaint by William G. Krueger to quiet title to certain lands against Hackley Union National Bank & Trust Company of Muskegon, Michigan, a national banking corporation, administrator of the estate of John Storms, and Verna Walgren, August Schippa, Marie VanToll, Lyle Deneau, Loretta Hillier, Marjorie Olesen, Gertrude Steiner, Florence Seuffert, Roberta Walburn, Evelyn Phinney, James Pino, Garrison Pino, Richard Storms, Arthur Storms, and Margaret Gibson. Jessie Krueger, administratrix of plaintiff's estate, substituted as

plaintiff during pendency of action. Judgment for plaintiff. Defendant bank appeals. Reversed.

*O'Toole & Jacobi,* for plaintiff.

*Landman, Grimm, Bradbury & Laurin,* for defendant bank.

Hoffius, J. William Krueger during his lifetime filed a complaint against the defendants seeking a declaration that he was the owner of a 40-acre parcel of real estate in Montague township, Muskegon county. He died before the trial of this cause and his widow, as administratrix of his estate, was substituted as plaintiff.

William Krueger held record title to an undivided 1/2 interest in said premises by warranty deed dated May 24, 1933, from John Storms and wife, Mamie Storms. At the time of filing complaint and at the trial of this cause, John Storms was the record title holder of the other undivided 1/2 interest.

Reformation because of mistake in designating the interest deeded to the Kruegers and adverse possession were the bases of relief set forth in the complaint. At the trial, plaintiff offered no proof in support of reformation. Proofs were offered only in support of adverse possession. The defendants introduced no evidence at the trial.

At the time of William Krueger's death on January 11, 1964, he had in his possession tax receipts covering the disputed property for the years 1933 through 1961. In addition he had the deed dated January 21, 1933, by which John Storms and wife originally acquired title to the whole 40 acres. This deed was not recorded until May 24, 1933, the same day that Krueger's deed was recorded.

Substituted plaintiff testified that she married William Krueger in 1952 and lived with him until his death. Prior to 1948 he had been a resident of Chicago, Illinois, and came to this area only during the summers. She stated that he went to the 40-acre parcel 3 or 4 times a week to "look around, clean up * * * and pick some apples." There was also evidence William Krueger resided in a summer cottage on the premises for a short time from 1948 to 1949, that he granted an oil and gas lease in 1951 and pursuant thereto received monthly royalties for a year or two. A neighbor also used the property to run his horses but paid no rent. Mrs. Krueger's testimony further showed that plaintiff paid the taxes from 1952 until his death.

The township treasurer testified that William Krueger had paid the taxes to him "most of the time" from 1946 to his death, and he did not recall that John Storms had ever paid the taxes on the property.

There was also testimony by the neighbor who had resided in her premises since 1942 that a summer cottage on this property had occasionally been used by the former Mrs. Krueger's relatives. She also confirmed the fact that William Krueger had repaired the fences and cleaned out the woods.

The question here involved is whether the use made of these premises by a cotenant amounts to adverse possession for the statutory period sufficient to oust a cotenant. There is a presumption that a cotenant who enters into possession recognizes the rights of his cotenant until the contrary clearly appears. *Donohue* v. *Vosper* (1915), 189 Mich 78, affirmed (1917), 243 US 59 (37 S Ct 350, 61 L ed 592). The reason for this presumption is best explained by the following excerpts of Supreme Court opinions:

"The actual possession of a tenant in common will not be presumed adverse to that of his cotenants, and his constructive possession in like manner will be limited to his interest as tenant in common. The possession of one tenant in common, unless under a claim of exclusive right, will not affect the rights of the cotenants. Such exclusive claim and denial of their right, should be clear and unambiguous and brought home to the knowledge of the cotenants either by express notice, or by implication. And if the latter, all doubt growing out of the nature and character thereof, should be against an ouster. The presumption should be that the tenant in possession respects and recognizes the rights of his cotenants, until the contrary clearly appears; that the possession is rightful, and not to the exclusion of others having equal rights." *Campau* v. *Campau* (1880), 44 Mich 31, 34.

"The reason for this rule, in our opinion, is apparent, because the possession itself is rightful and does not import adverse possession, as would that of a stranger. So that the presumption of occupation as a cotenant must be overcome by acts and declarations which are clearly inconsistent therewith, and which are brought home to the cotenant." *Donohue* v. *Vosper, supra,* p 91.

See, also, *Taylor* v. *S. S. Kresge Company* (1950), 326 Mich 580.

In the recent case of *Horbes* v. *Ahearn* (1963), 369 Mich 423, 427, the Court reaffirmed the following principle first enunciated in *Donohue* v. *Vosper, supra:*

"Under some circumstances, a tenant in common may acquire title against his cotenants by adverse possession, *but the proofs (thereof) must be clear and cogent and the case may not be made out by inference.*" (Emphasis supplied.)

The law of adverse possession as between cotenants is thoroughly discussed in 82 ALR2d 5,

where at pp 23 and 24 the author of that annotation summarizes:

"A cotenant, whether a tenant in common or a joint tenant, may undoubtedly hold the common premises adversely to his cotenant or cotenants, and in such fashion as eventually to ripen his claim into title against them, even though his possession was commenced amicably as a cotenant. To establish that his possession was adverse he must show that at the time in question he was personally, or by tenant or agent, in actual possession of the premises, or of the particular and sufficiently defined part of the premises to which he makes claim, that he intended an actual adverse possession operative as of that time, that he did in fact hold and claim the premises adversely, and lastly, that his cotenant or cotenants had knowledge or notice of that fact. In short, there are but three elements to be established: (1) the intent; (2) the adverse possession in fact; and (3) the knowledge or notice."

In Michigan it appears that these elements can partially be established by a long and undisturbed possession. See *Dubois* v. *Campau* (1873), 28 Mich 304; *La Fountain* v. *Dee* (1896), 110 Mich 347; and *Corby* v. *Thompson* (1917), 196 Mich 706. All of these cases, however, are distinguishable from the instant case because of the nature and duration of the possession in those cases.

Mr. Krueger or his family only went to the premises intermittently and did not occupy them continuously. There is no evidence of notice to Storms nor is there "clear and cogent" evidence of any ouster. At most, his ouster, acquiescence, or the notice to him would have to be inferred. Krueger's alleged acts of ownership were inadequate to meet the "clear and cogent" rule which we are bound to follow.

Our disposition of the case makes consideration of evidentiary questions raised by the defendants unnecessary.

Judgment reversed. Costs to defendants.

HOLBROOK, P. J., and BURNS, J., concurred.